UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Case No. 13-36813(JPC) |
| LAKE DEARBORN, LLC, *et al.*,[1] | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

**FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) GRANTING RELATED RELIEF**

Upon the motion dated August 26, 2013 (the "*Motion*"),[2] of Lake Dearborn, LLC, *et al.* (the "*Debtors*"), pursuant to sections 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*"); Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"); and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "*Delaware Local Rules*"), requesting entry of interim and final orders (i) authorizing use of Cash Collateral by the Dearborn Debtors,[3] (ii) granting adequate protection to the Dearborn Prepetition Lenders, (iii) scheduling a final hearing, and (iv) granting other related relief as necessary [Illinois Docket No. 29], and the Court having reviewed and considered the Motion and the proffer of evidence, and hearings to consider approval of the Motion on an interim basis having been previously held and concluded by

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Lake Dearborn, LLC (3155); (ii) Dearborn Residential, LLC (5500); (iii) Dearborn Retail, LLC (5402); (iv) DR Dearborn Investment, LLC (7511); (v) 800 South Wells Phase II, LLC (0202); (vi) La Salle Commercial, LLC (6805); and (vii) Invsco Employee Services, Inc. (9657).

[2] The Motion was initially filed with the United States Bankruptcy Court for the District of Delaware (the "*Delaware Bankruptcy Court*") in case number 13-12113 and docketed in such case as Docket No. 10. Prior to the final hearing on the Motion, venue of these chapter 11 cases was transferred to the United States Bankruptcy Court for the Northern District of Illinois (the "*Illinois Bankruptcy Court*" or the "*Court*") pursuant to the Order Transferring Venue of these Chapter 11 Cases (the "*Venue Order*") [Delaware Docket No. 51].

[3] Unless otherwise indicated, capitalized terms used herein have the meanings ascribed to them in the Motion.

the Delaware Bankruptcy Court on August 29, 2013 (the "*First Interim Hearing*"), and September 11, 2013 (the "*Second Interim Hearing*"), and the Delaware Bankruptcy Court having previously entered orders approving the Motion on an interim basis and scheduling a final hearing [Delaware Docket Nos. 26 and 49 (collectively, the "*Interim Orders*")], each in accordance with section 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and Delaware Local Rule 4001-2; and a final hearing having been held before the Illinois Bankruptcy Court on October 8, 2013 (the "*Final Hearing*"), to consider entry of an order (the "*Final Order*" and together with the Interim Orders, the "*Cash Collateral Orders*") granting the Motion on final basis, in accordance with sections 105, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Illinois Local Rule 4001-2, and the Motion having complied with the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "*Illinois Local Rules*"); and upon all of the pleadings filed with the Court, and after due deliberation and consideration and good and sufficient cause appearing therefor, THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A. <u>Petition Date</u>. On August 19, 2013 (the "*Initial Petition Date*"), each of the Debtors except for Invsco Employee Services, Inc. (the "*First Filed Debtors*") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*Initial Chapter 11 Cases*"). On August 28, 2013 (the "*IES Petition Date*"), Invsco Employee Services, Inc. ("*IES*") filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*IES Chapter 11 Case*" and together with the Initial Chapter 11 Cases, the "*Chapter 11 Cases*"). The Debtors are continuing in the management and possession of their business and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. <u>Committee</u>. As of the date hereof, no request has been made for the appointment of a trustee or examiner, and no statutory committee of unsecured creditors has been appointed in the Chapter 11 Cases.

C. <u>Jurisdiction; Core Proceeding; Venue</u>. This Court has jurisdiction over the Chapter 11 Cases, this proceeding, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. <u>Notice</u>. Notice of the relief sought by the Motion and the First Interim Hearing was delivered via facsimile and/or United States mail on or before August 26, 2013, to the following parties-in-interest: (a) the secured lenders with security interests in the Dearborn Debtors' cash, (b) the Dearborn Debtors' largest twenty (20) unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions, and (c) the Internal Revenue Service (collectively, the "*Interim Notice Parties*"), (d) the Office of the United States Attorney for the District of Delaware, and (e) the Office of the United States Trustee for the District of Delaware (the "*Delaware Notice Parties*"). Notice of the Second Interim Hearing and entry of the first Interim Order was served by United States mail, first class postage prepaid, on or before August 29, 2013, to the Interim Notice Parties and the Delaware Notice Parties. Notice of the Final Hearing was served by United States mail, first class postage prepaid, on or before September 20, 2013, to the Interim Notice Parties, the Office of the United States Trustee for the Northern District of Illinois, and all other parties listed on the creditor matrix associated with the lead bankruptcy case in these Chapter 11 Cases. The Court concludes that the foregoing notice was sufficient and adequate under the circumstances set forth herein and presented to this Court, and complies with the provisions of sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, Illinois Local Rule 4001-2,

and any other applicable law, and no other further notice prior to entry of the Final Order is necessary or required.

E.  <u>No Objection</u>.  No written objection to the relief sought in the Motion was filed with the Court pursuant to the objection procedures set forth in the second Interim Order.

F.  <u>Prepetition Senior Financing Documents</u>.  The Dearborn Borrowers stipulate that: each of the Dearborn Borrowers executed that certain Promissory Note (the "*Dearborn Senior Note*") dated October 24, 2012, in favor of the Dearborn Senior Lender in the original principal amount of $4,153,085. The outstanding principal balance of the Dearborn Senior Note as of the Petition Date was approximately $2,500,000 plus accrued interest, fees, and costs (collectively, the "*Prepetition Senior Debt*"). As security for the Dearborn Senior Note, each of the Dearborn Borrowers granted to the Dearborn Senior Lender, a security interest in substantially all of the Dearborn Borrowers' real and personal property, including without limitation all accounts and property (collectively, the "*Dearborn Senior Lender Prepetition Collateral*"), pursuant to (i) that certain Mortgage, Security Agreement, Fixture Filing and Assignment of Leases and Rents (the "*Dearborn Mortgage*") dated October 24, 2012, executed by each of the Dearborn Borrowers in favor of the Dearborn Senior Lender; (ii) that certain Assignment of Leases and Rents (the "*Assignment of Rents*") dated October 24, 2012, executed by each of the Dearborn Borrowers in favor of the Dearborn Senior Lender; and (iii) those certain Account Pledge Agreements dated October 24, 2012, executed by each of the Dearborn Borrowers in favor of the Dearborn Senior Lender (the "*Escrow Agreements*" and together with the Dearborn Mortgage and the Assignment of Rents, the "*Prepetition Senior Security Documents*"). The Dearborn Borrowers further stipulate (such stipulation shall not be binding on any third party) that the Dearborn Senior Lender has a valid, first-priority lien on the Dearborn Senior Lender Prepetition Collateral.

G. <u>Prepetition Subordinated Financing Documents</u>. The Dearborn Borrowers stipulate that: Retail executed a Purchase Money Note (the "*Dearborn Subordinated Note*") dated October 22, 2012, in favor of Affordable/Lawless II, LLC (the "*Dearborn Subordinated Lender*" and together with the Dearborn Senior Lender, the "*Dearborn Prepetition Lenders*") in the original principal amount of $1,250,000. The outstanding principal balance of the Dearborn Subordinated Note as of the Petition Date was $1,250,000 plus accrued interest, fees, and costs (collectively, the "*Prepetition Subordinated Debt*"). As security for Dearborn Subordinated Note, Retail granted to the Dearborn Subordinated Lender, a subordinated security interest in substantially all of Retail's real and personal property, including without limitation all accounts and property, pursuant to (i) that certain Junior Mortgage, Security Agreement, Fixture Filing and Assignment of Leases and Rents (the "*Subordinated Mortgage*") dated October 22, 2012, executed by Retail in favor of Subordinated Lender and (ii) that certain Bill of Sale and Assignment and Assumption of Leases dated October 22, 2012, by and between Retail and the Subordinated Lender (the "*Subordinated Assignment*" and together with the Subordinated Mortgage, the "*Prepetition Subordinated Security Agreements*"). The relationships among the Dearborn Prepetition Lenders and Retail are also governed by that certain Subordination Agreement dated October 24, 2012, by and among the Dearborn Senior Lender, the Dearborn Subordinated Lender, and Retail.

H. <u>Cash Collateral</u>. The Dearborn Prepetition Lenders' "cash collateral," as that term is defined by section 363(a) of the Bankruptcy Code shall include any and all prepetition cash in which the Dearborn Prepetition Lenders have a valid security interest, and subject to section 552 of the Bankruptcy Code, all cash proceeds of the prepetition assets of the respective Dearborn

Borrowers subject to a lien by the Dearborn Prepetition Lenders (collectively, the "*Cash Collateral*").

I.  <u>Cause Shown</u>. The Dearborn Debtors have represented to the Court that:

(a) The Dearborn Debtors have an immediate and critical need for further use of the Cash Collateral to continue to operate their business and effectuate a reorganization of their business. Among other things, entry of this Final Order will avoid immediate and irreparable harm to the Dearborn Debtors and their estates that would otherwise result if the Dearborn Debtors were prevented from using the Cash Collateral on a final basis, and is in the best interests of the Dearborn Debtors, their creditors and their estates, and all parties in interest in these Chapter 11 Cases.

(b) The ability of the Dearborn Debtors to have sufficient available sources of working capital to continue their businesses, to attempt to effectuate a reorganization of their businesses, and to attempt to maximize the value of their assets depends upon the Dearborn Debtors' use of the Cash Collateral.

(c) The immediate entry of this Final Order is necessary to avoid immediate and irreparable harm to the Dearborn Debtors and their estates. The terms of the Dearborn Debtors' use of the Cash Collateral (i) are fair and reasonable; (ii) reflect the Dearborn Debtors' prudent exercise of business judgment consistent with their fiduciary duties; (iii) provide adequate protection to the Dearborn Prepetition Lenders pursuant to sections 361 and 363 of the Bankruptcy Code; and (iv) are necessary, essential, and appropriate for the continued operation and management of the Dearborn Debtors' businesses and the preservation of their assets and properties.

THEREFORE, IT IS HEREBY ORDERED THAT:

1. <u>Motion Granted</u>. The Motion shall be and hereby is granted on the terms and conditions set forth herein.

2. <u>Objections Overruled</u>. Any objection to the relief sought in the Motion is overruled.

3. <u>Authorization to Use Cash Collateral</u>. The Dearborn Debtors are hereby authorized to use the Cash Collateral for the period of time provided for in the Cash Collateral Budget attached hereto as <u>Exhibit A</u> (as such budgets may be extended, varied, supplemented, or otherwise modified in accordance with the terms of this Final Order, the "*Budget*"), solely as provided in the Cash Collateral Orders and the Budget. From and after the Initial Petition Date, the Cash Collateral shall not, directly or indirectly, be used to pay expenses of the Dearborn Debtors or to make debt payments (except as set forth in the Cash Collateral Orders) or otherwise disbursed except for those disbursements set forth in the Budget.

4. <u>Adequate Protection</u>.

(a) <u>Proceeds of Prepetition Collateral</u>. To the extent provided by section 552 of the Bankruptcy Code, all proceeds of the prepetition collateral that would be subject to the Dearborn Prepetition Lenders' liens pursuant to the Prepetition Security Documents (the "*Prepetition Collateral*") shall also be subject to the Adequate Protection Liens; <u>provided, however</u>, that for the avoidance of doubt, the Dearborn Subordinated Lender's liens shall only attach to proceeds attributable to Retail's assets.

(b) <u>Replacement Liens</u>. In addition to all existing security interests and liens granted to the Dearborn Prepetition Lenders in and to the Prepetition Collateral, as further adequate protection for the Dearborn Debtors' use of the Cash Collateral on the terms and

conditions of this Final Order, but only to secure an amount equal to the Collateral Diminution (as hereinafter defined), the Dearborn Borrowers hereby grant to their respective Dearborn Prepetition Lenders: pursuant to sections 361(2) and 363(e) of the Code, automatically and retroactively effective as of the Initial Petition Date, valid, binding, and properly perfected postpetition security interests and replacement liens on the Prepetition Collateral (the "*Adequate Protection Liens*"). As used in this Final Order, the following terms shall have the following meanings:

(i) "Collateral Diminution" shall mean an amount equal to the aggregate diminution of the value of each respective Dearborn Prepetition Lender's interest in the Prepetition Collateral from and after the Petition Date for any reason including, without limitation, depreciation, sale, loss, or use of the Prepetition Collateral, including the Cash Collateral, whether in accordance with the terms and conditions of the Cash Collateral Orders or otherwise;

(ii) "Prepetition Collateral" shall mean the assets owned by the Dearborn Debtors that are subject to liens held by the Dearborn Prepetition Lenders as of the Initial Petition Date pursuant to the applicable Prepetition Security Documents and shall include all proceeds thereof.

(c) Interest Payments. The Dearborn Borrowers agree to provide postpetition interest payments to the Dearborn Prepetition Lenders as adequate protection as described in the Budget.

5. Budget. The Dearborn Debtors shall not make disbursements in excess of those projected in the Budget; provided, however, that at the end of each month, the Dearborn Debtors' cash disbursements may exceed, on an aggregate basis, the cash disbursements set forth in the Budget by 15% (*i.e.*, the Dearborn Debtors may, in the aggregate, spend up to 115% of the amounts set forth in the Budget).

6. Perfection of Liens. All of the Dearborn Prepetition Lenders' liens, mortgages and security interests in the Collateral are deemed, and agreed by the Dearborn Debtors, to be valid, enforceable, perfected, and first priority (without binding effect to a subsequent trustee

13-36813:61.0:Proposed Order:Main Document Entered: 10/4/2013 4:34:16 PM by:Matthew McClintock Page 9 of 12

or creditors' committee, if any). The priority of such liens, mortgages and security interests as between the Dearborn Senior Lender and Dearborn Subordinated Lender shall be subject to the Prepetition Subordinated Security Agreements. The Dearborn Debtors are deemed to have waived all defenses, claims, counterclaims, rights of setoff and causes of action that they may have against the Dearborn Prepetition Lenders with respect to the Collateral, the liens, mortgages and security interests of the Dearborn Prepetition Lenders in the Collateral and the related prepetition financing documents.

7. <u>Carve-Out</u>. Subject to the remaining provisions of this Final Order, the Dearborn Prepetition Lenders' liens on and security interests in the Collateral, shall be subordinate and subject only to any unpaid fees payable pursuant to 28 U.S.C. § 1930 and any unpaid fees payable to the Clerk of this Court or the U.S. Trustee.

8. <u>Valid and Binding</u>. This Final Order shall constitute valid and binding obligations of the Dearborn Debtors, enforceable against the Dearborn Debtors and their estates in accordance with their terms.

9. <u>No Waiver</u>. The rights and obligations of the Dearborn Debtors and the rights, claims, liens, security interests and priorities of the Dearborn Prepetition Lenders arising under this Final Order are in addition to, and not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Dearborn Debtors, as prepetition debtors, under any prepetition financing documents.

10. <u>Effect of Modification of Order</u>. The Dearborn Debtors may seek to modify, vacate, or amend this Final Order upon two (2) business days' written notice to the Dearborn Prepetition Lenders. If any of the provisions of this Final Order are hereafter modified, vacated, or stayed by subsequent order of this or any other Court, such stay, modification or

vacatur shall not affect the validity of any prepetition obligations outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such prepetition obligations.

11. <u>Effect of Debtor in Possession Financing</u>. If any of the Dearborn Borrowers file a motion pursuant to section 364(d) of the Bankruptcy Code, each of the Dearborn Prepetition Lenders may terminate its consent to the Dearborn Borrowers' use of Cash Collateral by providing the Dearborn Borrowers three business days' prior written notice.

12. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any other direct, indirect or incidental beneficiary.

13. <u>Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

14. <u>Order Effective</u>. This Final Order shall be effective as of the date of signature by the Court.

IT IS SO ORDERED.                    ENTER:

                                     *Jacqueline P. Cox*

Dated: October 8, 2013               J. Cox
                                     United States Bankruptcy Judge

13-36813:61.0:Proposed Order:Main Document Entered: 10/4/2013 4:34:16 PM by:Matthew McClintock Page 11 of 12

# EXHIBIT A

13-36813-1.0:Proposed Order:Main Document Entered: 10/4/2013 4:34:16 PM by:Matthew McClintock Page 12 of 12

**Garvey Court**
13 Week Cash Flow Budget
September 15, 2013 through December 8, 2013

| | | | | | | | WEEK ENDING | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 15-Sep-13 | 22-Sep-13 | 29-Sep-13 | 6-Oct-13 | 13-Oct-13 | 20-Oct-13 | 27-Oct-13 | 3-Nov-13 | 10-Nov-13 | 17-Nov-13 | 24-Nov-13 | 1-Dec-13 | 8-Dec-13 | TOTAL |
| **INCOME** | | | | | | | | | | | | | | |
| Base rent | 14,074 | 10,076 | 10,076 | 10,905 | 10,905 | 10,905 | 10,905 | 10,905 | 10,905 | 10,905 | 10,905 | 10,905 | 10,905 | 143,276 |
| Reimursable expenses: | | | | | | | | | | | | | | |
| Common area maintenance | | 3,441 | 3,441 | 3,978 | 3,978 | 3,978 | 3,978 | 3,978 | 3,978 | 3,978 | 3,978 | 3,978 | 3,978 | |
| Real estate taxes | | 1,325 | 1,325 | 1,548 | 1,548 | 1,548 | 1,548 | 1,548 | 1,548 | 1,548 | 1,548 | 1,548 | 1,548 | |
| Total reimbursable charges | | 4,766 | 4,766 | 5,526 | 5,526 | 5,526 | 5,526 | 5,526 | 5,526 | 5,526 | 5,526 | 5,526 | 5,526 | 64,792 |
| **TOTAL INCOME** | 14,074 | 19,608 | 19,608 | 21,957 | 21,957 | 21,957 | 21,957 | 21,957 | 21,957 | 21,957 | 21,957 | 21,957 | 21,957 | 208,068 |
| **EXPENSES** | | | | | | | | | | | | | | |
| Common area maintenance expenses: | | | | | | | | | | | | | | |
| Accounting services | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 130 | 1,690 |
| HVAC | - | - | - | - | - | 250 | 250 | 250 | 250 | 250 | - | 250 | 250 | 1,500 |
| Insurance – Workman's compensation | - | 210 | 210 | 210 | 210 | 210 | 210 | 210 | 210 | 210 | 210 | 210 | 210 | 2,520 |
| Janitorial: | | | | | | | | | | | | | | |
| Labor | 2,720 | 2,720 | 2,720 | 2,720 | 2,720 | 2,700 | 2,720 | 2,720 | 2,720 | 2,720 | 2,720 | 2,720 | 2,720 | 35,340 |
| Supplies | 300 | - | - | 250 | - | - | - | - | 250 | 250 | 250 | - | - | 1,550 |
| Total janitorial | | | | | | | | | | | | | | |
| Pest control | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 1,469 |
| Plumbing | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Real estate taxes | | | | | | | | | | | | | | |
| Repairs and maintenance | 500 | 4,971 | 2,215 | 1,870 | - | - | - | 818 | 818 | 818 | 818 | - | - | 12,828 |
| Elevator | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Security | 1,725 | 1,725 | 1,725 | 1,725 | 1,725 | 1,725 | 1,725 | 1,725 | 1,725 | 1,725 | 1,725 | 1,725 | 1,725 | 22,425 |
| Telephone | 117 | 117 | 117 | 117 | 117 | 117 | 117 | 117 | 117 | 117 | 117 | 117 | 117 | 1,521 |
| Uniforms | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 2,275 |
| Utilities: | | | | | | | | | | | | | | |
| Electric | 1,800 | 1,600 | 1,700 | 1,700 | 1,800 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 22,200 |
| Gas | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 925 | 925 | 925 | 925 | 925 | 925 | 9,316 |
| Water/Sewer | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 6,825 |
| Total utilities | | | | | | | | | | | | | | |
| Waste/Recycling | 268 | 268 | 268 | 268 | 268 | 268 | 268 | 268 | 268 | 268 | 268 | 268 | 268 | 3,484 |
| Total common area maintenance | | | | | | | | | | | | | | |
| Advertising/lease commissions | - | 6,600 | - | - | 6,600 | - | - | - | - | - | - | - | - | 13,200 |
| United States Trustee Fees | - | - | - | - | - | - | 975 | - | - | - | - | - | - | |
| Bank processing fees | | | | | | | | | | | | | | |
| Interest expense – senior debt | - | - | 2,391 | 2,391 | 2,391 | 2,391 | 2,391 | 2,391 | 2,391 | 2,391 | 2,391 | 2,391 | 2,391 | 26,301 |
| Interest expense - Purchase money note | - | - | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 22,913 |
| **TOTAL EXPENSES** | 8,911 | 19,690 | 14,910 | 14,815 | 19,395 | 12,925 | 13,920 | 14,400 | 14,400 | 14,150 | 14,150 | 13,332 | 13,332 | 187,355 |
| **NET WEEKLY CASH FLOW/(CASH SHORTAGE)** | 5,163 | (82) | 4,698 | 7,142 | 2,562 | 9,032 | 8,037 | 7,557 | 7,557 | 7,807 | 7,807 | 8,625 | 8,625 | 20,713 |