# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) Case No. 13-36813(JPC) |
| LAKE DEARBORN, LLC, *et al.*,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing: Wednesday, October 30, 2013, at 2:00 p.m. |

## NOTICE OF EMERGENCY MOTION

PLEASE TAKE NOTICE that on October 30, 2013, at 2:00 p.m., the undersigned shall appear before the Honorable Bruce W. Black, United States Bankruptcy Judge, in the courtroom usually occupied by him, United States Courthouse, 219 South Dearborn Street, courtroom 719, Chicago, Illinois, and then and there present the *Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Scheduling a Final Hearing; and (III) Approving Notice Procedures*, a copy of which is attached hereto and herewith upon you.

Dated:  October 30, 2013

**LAKE DEARBORN, LLC, et al.**
By: /s/ Harley J. Goldstein

**GOLDSTEIN & MCCLINTOCK, LLLP**
Harley J. Goldstein
Harold D. Israel
208 S. LaSalle Street, Suite 1750
Chicago, Illinois  60604
Telephone: (312) 337-7700
Facsimile:  (312) 277-2305

*Counsel for the Debtors and*
*Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Lake Dearborn, LLC (3155); (ii) Dearborn Residential, LLC (5500); (iii) Dearborn Retail, LLC (5402); (iv) DR Dearborn Investment, LLC (7511); (v) 800 South Wells Phase II, LLC (0202); (vi) La Salle Commercial, LLC (6805); and (vii) Invsco Employee Services, Inc. (9657).

# CERTIFICATE OF SERVICE

I, Harley J. Goldstein, an attorney, do hereby certify that on October 30, 2013, I caused true and correct copies of the foregoing *Notice of Emergency Motion* and *Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Scheduling a Final Hearing; and (III) Approving Notice Procedures* to be filed with CM/ECF the Court's electronic filing system and further served upon the parties in the attached service list as indicated therein.

Dated: October 30, 2013                                                                 /s/ Harley J. Goldstein

## **SERVICE LIST**

**Via CM/ECF Service**

Paige E Barr on behalf of Creditor Affordable Lawless II, LLC
paige.barr@kattenlaw.com

Kurt M Carlson on behalf of Creditor The Private Bank & Trust Company
kcarlson@carlsondash.com, knoonan@carlsondash.com

Kurt M Carlson on behalf of Creditor The PrivateBank & Trust Company
kcarlson@carlsondash.com, knoonan@carlsondash.com

Barry A Chatz on behalf of Creditor LaSalle Private Residences Concominium Association
bachatz@arnstein.com, jbmedziak@arnstein.com

David R Doyle on behalf of Creditor CSV Funding LLC
ddoyle@shawfishman.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Colleen E McManus on behalf of Creditor The Private Bank & Trust Company
cmcmanus@carlsondash.com, knoonan@carlsondash.com;jbubacz@carlsondash.com

Colleen E McManus on behalf of Creditor The PrivateBank & Trust Company
cmcmanus@carlsondash.com, knoonan@carlsondash.com;jbubacz@carlsondash.com

Kevin H Morse on behalf of Creditor LaSalle Private Residences Concominium Association
khmorse@arnstein.com

Kevin H Morse on behalf of Debtor Lake Dearborn LLC
khmorse@arnstein.com

Steven B Towbin on behalf of Creditor CSV Funding LLC
stowbin@shawfishman.com

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 13-36813(JPC) |
| LAKE DEARBORN, LLC, *et al.*,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing: Wednesday, October 30, 2013, at 2:00 p.m. |

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN
POSTPETITION FINANCING; (II) SCHEDULING A FINAL HEARING;
AND (III) APPROVING NOTICE PROCEDURES**

The above-captioned debtors and debtors-in-possession (collectively, the "*Debtors*"), by this emergency motion (the "*Motion*"), respectfully seek entry of interim and final orders pursuant to sections 105, 361, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*"); Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"); and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "*Local Rules*") (i) authorizing the Debtors to obtain postpetition financing (as defined below, the "*DIP Loan*"), (ii) scheduling a final hearing, and (iii) approving procedures for providing notice of the interim and final hearings. In support of this Motion, the Debtors submit the Declaration of Mark Goldstein (the "*Goldstein Declaration*") filed concurrently herewith and respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Lake Dearborn, LLC (3155); (ii) Dearborn Residential, LLC (5500); (iii) Dearborn Retail, LLC (5402); (iv) DR Dearborn Investment, LLC (7511); (v) 800 South Wells Phase II, LLC (0202); (vi) La Salle Commercial, LLC (6805); and (vii) Invsco Employee Services, Inc. (9657).

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Debtors' chapter 11 cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicates for the relief requested herein are sections 105, 361, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rule 4001-2.

**BACKGROUND**

**A.      General Background**

3.      On August 19, 2013 (the "*Initial Petition Date*"), Lake Dearborn, LLC ("*Lake Dearborn*"); Dearborn Residential, LLC ("*Dearborn Residential*"); Dearborn Retail, LLC ("*Dearborn Retail*"); DR Dearborn Investment, LLC ("*DR Dearborn*"); 800 South Wells Phase II, LLC ("*South Wells*"); and La Salle Commercial, LLC ("*La Salle Commercial*," and collectively with Lake Dearborn, Dearborn Residential, Dearborn Retail, DR Dearborn, and South Wells, the "*Initial Debtors*") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*Initial Chapter 11 Cases*").

4.      On August 28, 2013 (the "*IES Petition Date*"), Invsco Employee Services, Inc. ("*IES*") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*IES Chapter 11 Case*," and together with the Initial Chapter 11 Cases, the "*Chapter 11 Cases*").

5.      The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      A description of the Debtors' businesses, the circumstances leading to filing the Chapter 11 Cases, and the Debtors' prepetition debt structure is set forth in the Goldstein Declaration.

**B.     The Need for Postpetition Financing**

7.      As set forth in the Goldstein Declaration, the Debtors' estates will suffer immediate and irreparable harm if the Debtors cannot immediately access the funds to be provided pursuant to the proposed debtor-in-possession financing. The Debtors need liquidity to pay wages and other critical expenses and to fund the administrative costs of bankruptcy reorganization.

8.      The Debtors are unable to obtain debtor-in-possession financing either as unsecured credit under section 364(a) or (b) of the Bankruptcy Code or allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. Furthermore, the Debtors are unable to obtain debtor-in-possession financing without providing a lien to the proposed DIP Lender (as defined herein) that is senior to one alleged lien on the Debtors' property.

9.      Specifically, the Debtors have an immediate need for interim approval of $600,000 under the proposed DIP Loan in order to operate in the ordinary course of business. Simply put, the relief sought herein is necessary for the Debtors to meet their financial obligations in order to emerge from chapter 11.

10.     The Debtors have already suffered disruption to their business operations and reorganization efforts as a result of their lack of sufficient liquidity. Absent this Court's approval of the interim relief sought herein, the Debtors will suffer additional disruption that could jeopardize their ability to successfully reorganize.

11.     The DIP Lender has agreed to fund the Debtors' continued operations in chapter 11 in exchange for the reasonable protections proposed, including first, second, or third priority liens on all or substantially all assets of the Debtors (other than avoidance actions).

**RELIEF REQUESTED**

12. RGB Equities, LLC (the "*DIP Lender*") has agreed to provide a debtor-in-possession loan of $600,000 (the "*DIP Loan*") pursuant to the terms of that certain Letter of Intent and Exhibits (the "*DIP Term Sheet*") dated October 29, 2013, by and among the Debtors and the DIP Lender and attached hereto as Exhibit A.

13. By this Motion, the Debtors seek interim and final orders (respectively, the "*Interim Order*" and "*Final Order*," and collectively, the "*DIP Orders*"), *inter alia*:[2]

(i) authorizing, pursuant to section 364 of the Bankruptcy Code, the Debtors to obtain a secured debtor-in-possession loan in the amount of $600,000 (the "*DIP Loan*"); provided that all borrowings shall be used in accordance with a weekly cash flow forecast, in the form of the budget attached to the DIP Term Sheet (as amended, modified, or supplemented from time to time, the "*Budget*"), including all budgeted additional retainer payments to the Debtors' professionals;

(ii) authorizing the Debtors to execute, deliver, and enter into any required financing documents in connection with the DIP Loan (the "*DIP Loan Documents*") and to perform such other and further acts as may be necessary, required, or desirable in connection therewith;

(iii) granting security interests and liens (the "*DIP Liens*") to the DIP Lender pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code with respect to the collateral described in the DIP Term Sheet (the "*DIP Collateral*") to secure the amounts advanced under the DIP Loan; provided that such interests and liens are subject to the Carve-Out described herein;

(iv) scheduling a final hearing (the "*Final Hearing*"), to be held no later than fourteen (14) days after entry of the Interim Order, to consider entry of the Final Order; and

(v) approving certain notice procedures for the hearings hereon.

**SUMMARY OF PRINCIPAL TERMS OF DIP LOAN**

14. The Debtors and the DIP Lender engaged in good faith and extensive arm's-length negotiations that culminated in the DIP Term Sheet.[3]

---

[2] Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the DIP Term Sheet.

15. The significant terms of the DIP Term Sheet are as follows:

| **Lender:** | RGB Equities, LLC |
|---|---|
| **Borrowers:** | Lake Dearborn, LLC; Dearborn Residential, LLC; Dearborn Retail, LLC; DR Dearborn Investment, LLC; 800 South Wells Phase II, LLC; La Salle Commercial, LLC; and Invsco Employee Services, Inc. |
| **Amount of Loan:** | $600,000 |
| **Term of Loan:** | 1 year from Closing Date (the "*Maturity Date*") |
| **Interest and Fees:** | Payment in kind. All interests, fees and costs will total $200,000 in the aggregate and will be due on the Closing Date. The Debtors also agree to pay legal fees and costs incurred in connection with the DIP Lender's enforcement of remedies under the DIP Loan Documents, and such fees and costs will be incorporated into the principal balance of the DIP Loan. The return to the DIP Lender is based on an interest rate of 13% per annum and fees in the amount of 15% of the amount of the DIP Loan. |
| **Use of Proceeds:** | Proceeds of the DIP Loan will be used in accordance with Budget, subject to permitted variances, including the retainer amounts contained therein and accrued but unpaid amounts in the Budget related to prior weekly periods. |
| **DIP Liens:** | The Debtors propose to grant to the Lender (subject to the Carve-Out) perfected security interests and liens on the DIP Collateral (excluding any avoidance actions under chapter 5 of the Bankruptcy Code). |
| **Carve-Out:** | All DIP Liens in favor of the Lender will be subject to a carve-out of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930, and (ii) amounts payable on behalf of fees and expenses reflected in the Budget which have been or will be accrued by Goldstein & McClintock LLLP, the Debtors' bankruptcy counsel. |
| **Priority of Liens:** | The DIP Liens are subject to valid, perfected, and nonavoidable prepetition liens and perfected postpetition liens as permitted by Section 546(b) of the Bankruptcy Code, except for DIP Liens on the La Salle Property, which shall be first-priority and senior to all existing liens. |
| **Conditions Precedent :** | (i)  Court approval of the DIP Loan and entry of the Interim Order, including the approval of any priming liens requested by this Motion;<br>(ii)  The Debtors' clear and absolute title to the DIP Collateral except for the liens identified in the DIP Terms Sheet; and<br>No Events of Default occurring prior to loan closing. |

---

[3] This summary is qualified in its entirety by reference to the specific provisions of the DIP Term Sheet and any order approving this Motion. The terms of the order approving this Motion (first), the DIP Term Sheet (second), shall govern in the event of any inconsistency between this summary and those documents.

4816-3407-0293, v. 8                5

| | |
|---|---|
| **Events of Default:** | In addition to general satisfaction of the terms of the DIP Term Sheet, any of the following shall constitute an "Event of Default" subject to grace, notice, and cure periods to be agreed as applicable:<br><br>(i)    Reversal, modification, amendment, or stay of the Interim Order or the Final Order that has not been accepted by DIP Lender;<br>(ii)   Destruction or damage to the Project deemed substantial by the DIP Lender;<br>(iii)  Material and adverse change in the Debtors' financial or the Project's operating condition; and<br>(iv)  Discovery of any material misrepresentation in Debtors' application, submissions, or representations. |

## COMPLIANCE WITH LOCAL RULE 4001-2

16.    Under the Local Rules, the Debtors are required, in a financing motion, to highlight certain extraordinary provisions included in the proposed Interim Order and DIP Term Sheet, identify the location of such provisions, and justify the inclusion of such provisions. The proposed Interim Order and DIP Term Sheet do not include any such extraordinary provisions; therefore, the Motion complies with Local Rule 4001-2.

## BASIS FOR RELIEF

### A.    The Debtors' Immediate Need for Postpetition Financing

17.    As set forth in the Goldstein Declaration, the Debtors require expedited relief to avoid the immediate and irreparable harm that will be suffered by these estates if the Debtors do not obtain the liquidity needed to sustain the business, including to pay wages and critical expenses.

18.    Local Rule 4001(b) provides that the Court may grant interim relief when it is necessary to avoid immediate and irreparable harm to the estate. Bankruptcy Rule 4001(c) provides that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, this Court is empowered to conduct an interim expedited hearing on motion at which time it may authorize a debtor to obtain credit to the extent necessary

to avoid immediate and irreparable harm to a debtor's estate. The Debtors request that the Court conduct a hearing and enter the Interim Order as soon as practicable in order to avoid immediate and irreparable harm to the Debtors' estates.

19. The Debtors have determined, in consultation with their advisors, that they are not able to obtain alternative financing on terms superior to the terms of the DIP Loan, and such terms are market terms that represent the best terms reasonably available to the Debtors. This Court and courts in other districts have granted the requested relief in similar chapter 11 cases. *See, e.g*, *In re Olde Prairie Block Owner, LLC*, 448 B.R. 482, 497 (Bankr. N.D. Ill. 2011); *In re Ryan Int'l Airlines, Inc.*, Case No. 12-80802 (Bankr. N.D. Ill. Mar. 21, 2012) (Docket No. 89) (granting secured liens to DIP lender after finding that debtors "surveyed various sources of post-petition cash" and "were unable to find a lender to extend credit").

**B.     The Proposed DIP Loan Should Be Authorized**

20. Section 364 of the Bankruptcy Code authorizes this Court to allow the Debtors to obtain postpetition financing from the DIP Lender in the manner described in the DIP Term Sheet. As described above, as security for all borrowings under the DIP Loan, the Debtors propose to grant to the DIP Lender (subject to the Carve-Out) perfected security interests and liens on the DIP Collateral (excluding any avoidance actions under chapter 5 of the Bankruptcy Code), including a first priority "primed" security interest and lien in the La Salle Property (as defined in the Goldstein Declaration at ¶ 8).

21. The granting of security interests and liens is governed by section 364(c) of the Bankruptcy Code. Specifically, section 364(c) provides:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

> (2)     secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3)     secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).  Further, under section 364(d):

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
> (A)     the trustee is unable to obtain such credit otherwise; and
>
> (B)     there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

22.     As set forth in the Goldstein Declaration, based on the nature of the Debtors' businesses and the type of financing available in the industry for businesses such as the Debtors, the Debtors are:

> (i)     unable to obtain unsecured financing;
>
> (ii)     unable to obtain unsecured credit or debt (allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code) in an amount sufficient and readily available to maintain ongoing operations and continue their reorganization efforts; and
>
> (iii)     unable to obtain secured credit without granting a primed, first-priority lien on the La Salle Property.

Accordingly, the Debtors satisfy sections 364(c) and 364(d)(1) of the Bankruptcy Code, and the Court is authorized to grant the DIP Lender a priming lien on the DIP Collateral.

23.     As set forth in the Goldstein Declaration, the Debtors and their professionals have contacted numerous lenders in connection with the proposed financing, including the Debtors' prepetition senior lenders.  In total, over twenty lenders have executed confidentiality agreements to receive information with respect to requested postpetition financing.  Additional information was provided to at least 15 prospective lenders.  The DIP Lender was the *only* lender to offer a

firm commitment to provide postpetition financing. The other potential lenders either affirmatively declined the opportunity to provide the DIP Loan, did not issue a commitment letter, or have not followed up with the Debtors prior to the date hereof. The Debtors have thus determined that the terms of financing proposed by the DIP Lender are the most favorable available under the circumstances.

24. This is particularly true given: (i) that the Debtors do not have unencumbered cash and are without sufficient liquidity to pay their employees and employee-related expenses as well as restructuring-related expenses; (ii) that without the postpetition financing, the Debtors lack the resources to develop a strategy to emerge from chapter 11; (iii) the lack of response to the Debtors' request for financing contemplated by the proposed DIP Loan; and (iv) that the Debtors cannot survive through use of unencumbered property or solely through the use of cash collateral. The Debtors negotiated the best financing arrangement that they can reasonably expect under the circumstances. The fees are customary and reasonable.

25. The Debtors' efforts to obtain postpetition financing therefore satisfy the statutory requirement of section 364(c) of the Bankruptcy Code. *See Olde Prairie Block*, 448 B.R. at 485 (considering testimony from debtor's developer in determining that debtor was unable to obtain unsecured credit to pay postpetition arrearage in order to prevent immediate and irreparable harm to estate); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (approving section 364(c) financing facility and holding that the debtor made reasonable efforts to obtain less onerous terms where it approached four lending institutions, was rejected by two, and selected the least onerous financing option from the remaining two lenders).

26. Consequently, after considering the alternatives and taking into account the costs of postpetition financing and the need to obtain financing on a timely basis, the Debtors

determined in their business judgment to accept the DIP Lender's proposal as the best option for the Debtors. The Debtors believe that the terms described in the DIP Term Sheet are competitive in the marketplace, address the Debtors' working capital and liquidity needs, and present the best option available to enable the Debtors to continue to operate their business and maximize the value of their assets.

### C.  Adequate Protection Is Unnecessary Because the Lender That Is Being "Primed" Does Not Have a Claim

27. On or about May 15, 2013, The Acquest Group, LLC ("*Acquest*"), an entity that has the same ultimate owner as the Debtors, executed that certain promissory note (the "*Acquest Note*") in favor of CSV Funding, LLC (the "*Acquest Lender*") in the original principal amount of $2,000,000. The Acquest Lender required that La Salle Commercial grant to it a security interest in the La Salle Property pursuant to (a) that certain Mortgage and Security Agreement, dated May 15, 2013, executed by La Salle Commercial in favor of the Acquest Lender (the "*La Salle Mortgage*"); and (b) that certain Assignment of Rents and Leases dated May 15, 2013, executed by La Salle Commercial in favor of the Acquest Lender (together with the La Salle Mortgage, the "*La Salle Security Documents*"). La Salle Commercial is not a borrower or guarantor with respect to the Acquest Note and did not receive, directly or indirectly, any of the proceeds of the Acquest Note. (Goldstein Declaration at ¶ 17.) Instead, the Acquest Note proceeds were used by Acquest to make a deposit with respect to a potential acquisition that ultimately did not occur, and the deposit was forfeited. (*Id.*)

28. In order to grant a "priming" lien on the La Salle Property, the Debtors must show that the holders of any lien in that property will receive adequate protection from any loss of value to such interest from the granting of a more senior lien. 11 U.S.C. § 364(d)(1)(B). Section 506(d) provides that "[t]o the extent that a lien secures a claim against the debtor that is not an

allowed secured claim, such lien is void, unless (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of claim under section 501 of this title." Neither exception is applicable here because the Acquest Lender does not have **any** claim against **any** of the Debtors under **any** section of the Bankruptcy Code (instead its claim is against a non-debtor).

29. In this case, the Acquest Lender's lien interest has no value because its lien is void under section 506(d) of the Bankruptcy Code because the Acquest Lender has no claim against La Salle Commercial that can be secured by such lien. *See, e.g.*, *In re Palmdale Hills Prop.*, 2011 WL 7478771, at *4 (Bankr. C.D. Cal. Nov. 3, 2011) (finding that lien that does not secure an obligation of the debtor is void); *Stoebner v. Ritchie Capital Mgmt., L.L.C. (In re Polaroid Corp.)*, 472 B.R. 22 (Bankr. D. Minn. 2012) (same).

30. Moreover, because La Salle Commercial's grant of a security interest pursuant to the La Salle Security Documents is a "textbook" constructive fraudulent transfer case under section 548(a)(1)(B), the Debtors submit that Acquest Lender's lien interest in the La Salle Property has no value.

31. La Salle Commercial intends on filing a separate adversary complaint to ultimately avoid the liens and security interests granted to the Acquest Lender under section 506(d) and/or 548 of the Bankruptcy Code. For purposes of this Motion, the Debtors request that the Court conduct a valuation, for determination of adequate protection, of the Acquest Lender's liens. *See In re Forrest*, 424 B.R. 831, 833 (Bankr. N.D. Ill. 2009) ("Valuations may be appropriate for adequate protection, impairment, or similar purposes, but when the existence of the lien itself is at issue, then the 'validity' and 'extent' of the lien are certainly at issue, so an adversary proceeding is necessary."). In valuing the Acquest Lender's liens, the Court may

consider the probability that La Salle Commercial will succeed in its proposed adversary case to avoid such liens under either section 506(d) or 548. *See In re Millerburg*, 61 B.R. 125 (Bankr. E.D.N.C. 1986) (considering the high probability of a debtor's success in a contemplated preferential transfer action when evaluating priority of liens).

32. Given the likelihood that the Debtors will successfully avoid the liens held by the Acquest Lender, the Court should find that such liens have no value and therefore, no adequate protection of such lien interest is required in order to "prime" the "liens" granted by La Salle Commercial to a third party lender.

### D. The DIP Lender is Entitled to the "Good Faith" Protections of Section 364(e) of the Bankruptcy Code

33. The terms and conditions of the DIP Loan are fair and reasonable. Such terms and conditions were negotiated in good faith and at arm's length at all times by the Debtors, the DIP Lender, and their respective advisors. The Debtors and the DIP Lender also conducted extensive negotiations concerning the Budget and the impact of the financing on the Debtors' other secured lenders. The terms and provisions of the DIP Loan are fair and reasonable under the Debtors' circumstances and reflect the most favorable terms upon which the Debtors could obtain the needed postpetition financing

34. In light of the foregoing, the DIP Lender should be accorded the benefits and protections of section 364(e) of the Bankruptcy Code with respect to the DIP Loan; specifically, any loans, advances, or other financial accommodations that the DIP Lender makes or causes to be made from time to time to the Debtors on the terms and conditions set forth in the DIP Loan should be deemed to have been made and provided in "good faith" as the term is used in section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the DIP Orders or DIP Loan or any provisions therein are

hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the express consent of the DIP Lender.

### E. Establishing Notice Procedures and Request for Final Hearing

35. Pursuant to Local Rule 4001-2(c), the Final Order may only be entered after notice and a hearing. The Debtors propose to serve by overnight mail, facsimile transmission, or CM/ECF service, within three (3) business days of entry of the Interim Order by the Court, a copy of the Interim Order and a notice of the Final Hearing (collectively, the "*Final Hearing Notice*") to consider entry of the Final Order on the date established by the Court to the Notice Parties (defined herein). Any party in interest objecting to the relief sought at the Final Hearing shall serve and file objections, which objections shall: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; and (iii) be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois no later than three (3) business days before the Final Hearing and served upon the following parties so as to be actually received not less than three (3) business days before the Final Hearing: (a) the Office of the United States Trustee for the Northern District of Illinois, 219 South Dearborn Street, Room 873, Chicago, Illinois 60604, Attn: Gretchen Silver; (b) counsel to the Debtors, Goldstein & McClintock LLLP, 208 S. LaSalle Street, Suite 1750, Chicago, Illinois 60604, Attn: Harold D. Israel; (c) the DIP Lender, c/o Prudential Rubloff Commerical Finance, 980 N. Michigan Ave., 9th Floor, Chicago, Illinois 60611, Attn: Rob Powell; (d) counsel to the Dearborn Senior Lender, Carlson Dash, LLC, 216 S. Jefferson Street, Suite 504, Chicago, Illinois 60661, Attn: Kurt M. Carlson and Colleen E. McManus; (e) counsel to the Dearborn Subordinated Lender, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, Illinois 60661, Attn: John P. Sieger and Paige E. Barr; (f) the South Wells Lender, River City Investors, LLC, 3000 Town Center, Suite 2900, Southfield,

Michigan 48075; and (g) each of the creditors included on the lists filed under Rule 1007(d) for all of the Debtors on a consolidated basis (collectively, the "*Notice Parties*").

36. The Debtors request that the Court schedule the Final Hearing and approve the proposed notice and objection procedures for the Final Hearing set forth herein.

**NOTICE AND PRIOR MOTIONS**

37. The Debtors shall, as soon as reasonably possible after the Court schedules the interim hearing on this Motion to consider entry of the proposed Interim Order, serve by overnight mail, CM/ECF service, or facsimile transmission, a notice of such interim hearing on the Notice Parties and the Acquest Lender.

38. In light of the nature of the relief requested herein, the Debtors submit that no other and further notice of the Motion is necessary or required.

39. No previous request for the relief sought has been made to this or any other court.

WHEREFORE, the Debtors request that the Court (i) immediately enter the Interim Order in substantially the same form submitted herewith, (ii) schedule the Final Hearing, and (iii) grant the Debtors such other and further relief as the Court may deem just and proper.

Dated:  October 30, 2013	Respectfully submitted,
	**LAKE DEARBORN, LLC, et al.**

	By:    /s/ Harley J. Goldstein

	**GOLDSTEIN & MCCLINTOCK, LLLP**
	Harley J. Goldstein
	Harold D. Israel
	208 S. LaSalle Street, Suite 1750
	Chicago, Illinois  60604
	Telephone: (312) 337-7700
	Facsimile:  (312) 277-2305

	*Counsel for the Debtors and*
	*Debtors in Possession*

4816-3407-0293, v. 8	14