# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 13-36813(JPC) |
| LAKE DEARBORN, LLC, *et al.*,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) SCHEDULING A FINAL HEARING; AND (III) APPROVING NOTICE PROCEDURES

Upon the emergency motion (the "*Motion*") of the above-captioned debtors (collectively, the "*Debtors*"), pursuant to sections 105, 361, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*"); Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"); and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "*Local Rules*"), requesting entry of interim and final orders (i) authorizing the Debtors to obtain postpetition financing, (ii) scheduling a final hearing, and (iii) approving notice procedures, and the Court having reviewed and considered the Motion and the proffer of evidence, and a hearing to consider approval of the Motion on an interim basis having been held and concluded on November ___, 2013 (the "*Interim Hearing*"), in accordance with section 364 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, and upon all of the pleadings filed with the Court, and after due deliberation and consideration and good and sufficient cause appearing therefor, THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Lake Dearborn, LLC (3155); (ii) Dearborn Residential, LLC (5500); (iii) Dearborn Retail, LLC (5402); (iv) DR Dearborn Investment, LLC (7511); (v) 800 South Wells Phase II, LLC (0202); (vi) La Salle Commercial, LLC (6805); and (vii) Invsco Employee Services, Inc. (9657).

A.     Filing of Petitions.  On August 19, 2013 (the "*Initial Petition Date*"), Lake Dearborn, LLC ("*Lake Dearborn*"); Dearborn Residential, LLC ("*Dearborn Residential*"); Dearborn Retail, LLC ("*Dearborn Retail*"); DR Dearborn Investment, LLC ("*DR Dearborn*"); 800 South Wells Phase II, LLC ("*South Wells*"); and La Salle Commercial, LLC ("*La Salle Commercial*," and collectively with Lake Dearborn, Dearborn Residential, Dearborn Retail, DR Dearborn, and 800 South Wells, the "*Initial Debtors*") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*Initial Chapter 11 Cases*").  On August 28, 2013 (the "*IES Petition Date*"), Invsco Employee Services, Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*IES Chapter 11 Case*," and together with the Initial Chapter 11 Cases, the "*Chapter 11 Cases*").

B.     Committee.  Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtors are authorized to operate their business as debtors in possession.  No official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

C.     Jurisdiction; Core Proceeding; Venue.  This Court has jurisdiction over the Chapter 11 Cases, this proceeding, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     Notice.  Notice of the relief sought by the Motion and the Interim Hearing was delivered via overnight delivery, facsimile transmission, or CM/ECF service on or before October ____, 2013, to the following parties-in-interest: (a) the Office of the United States Trustee for the Northern District of Illinois, (b) the DIP Lender,[2] (c) the Dearborn Senior Lender, (d) the Dearborn Subordinated Lender, (e) the South Wells Lender, (f) the Acquest Lender, (g) the La Salle Condo

---

[2]     Unless otherwise indicated, capitalized terms used herein have the meanings ascribed to them in the Motion or the Goldstein Declaration submitted therewith.

Association (defined herein), and (h) each of the creditors included on the lists filed under Rule 1007(d) for all of the Debtors on a consolidated basis (collectively, the "*Notice Parties*"). The Court concludes that the foregoing notice was sufficient and adequate under the circumstances set forth herein and presented to this Court, and complies with the provisions of sections 361 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, Local Rule 4001-2, and any other applicable law, and no other further notice prior to entry of the Interim Order is necessary or required.

E. <u>Prepetition Dearborn Financing Documents</u>. For purposes of this section E, the Debtors stipulate (but such stipulation shall not be binding on any third party) as follows:

1. <u>Dearborn Senior Financing Documents</u>. Pursuant to that certain loan agreement (the "*Dearborn Senior Loan Agreement*") dated October 24, 2012, by and among each of Dearborn Residential, Dearborn Retail, and DR Dearborn (the "*Dearborn Borrowers*") and The Private Bank and Trust Company (the "*Dearborn Senior Lender*"), each of the Dearborn Borrowers executed that certain Promissory Note (the "*Dearborn Senior Note*") dated October 24, 2012, in favor of the Dearborn Senior Lender in the original principal amount of $4,153,085. The outstanding principal balance of the Dearborn Senior Note as of the Initial Petition Date was approximately $2,500,000 plus accrued interest, fees, and costs (collectively, the "*Dearborn Senior Debt*").

As security for the Dearborn Senior Note, each of the Dearborn Borrowers granted to the Dearborn Senior Lender a security interest in substantially all of the Dearborn Borrowers' real and personal property including, without limitation, all accounts and property (collectively, the "*Dearborn Senior Lender Prepetition Collateral*") pursuant to (i) that certain Mortgage, Security Agreement, Fixture Filing and Assignment of Leases and Rents dated October 24, 2012,

executed by each of the Dearborn Borrowers in favor of the Dearborn Senior Lender (the "*Dearborn Senior Mortgage*"); (ii) that certain Assignment of Leases and Rents dated October 24, 2012, executed by each of the Dearborn Borrowers in favor of the Dearborn Senior Lender (the "*Assignment of Rents*"); and (iii) those certain Account Pledge Agreements dated October 24, 2012, executed by each of the Dearborn Borrowers in favor of the Dearborn Senior Lender (the "*Escrow Agreements*," and together with the Dearborn Senior Mortgage and the Assignment of Rents, the "*Dearborn Senior Security Documents*"). The Dearborn Senior Lender has a valid, first-priority lien on the Dearborn Senior Lender Prepetition Collateral.

2. <u>Dearborn Subordinated Financing Documents</u>. On October 22, 2012, Dearborn Retail executed a Purchase Money Note (the "*Dearborn Subordinated Note*") in favor of Affordable/Lawless II, LLC (the "*Dearborn Subordinated Lender*" and together with the Dearborn Senior Lender, the "*Dearborn Prepetition Lenders*") in the original principal amount of $1,250,000. The outstanding principal balance of the Dearborn Subordinated Note as of the Petition Date was $1,250,000 plus accrued interest, fees, and costs (collectively, the "*Dearborn Subordinated Debt*").

As security for the Dearborn Subordinated Note, Dearborn Retail granted to the Dearborn Subordinated Lender a subordinated security interest in substantially all of Dearborn Retail's real and personal property, including without limitation all accounts and property, pursuant to (i) that certain Junior Mortgage, Security Agreement, Fixture Filing and Assignment of Leases and Rents dated October 22, 2012, executed by Dearborn Retail in favor of the Dearborn Subordinated Lender (the "*Dearborn Subordinated Mortgage*") and (ii) that certain Bill of Sale and Assignment and Assumption of Leases dated October 22, 2012, by and between Dearborn Retail and the Dearborn Subordinated Lender (the "*Dearborn Subordinated Assignment*," and

together with the Dearborn Subordinated Mortgage, the "*Dearborn Subordinated Security Documents*").[3]

The relationship among the Dearborn Prepetition Lenders and Dearborn Retail is also governed by that certain Subordination Agreement dated October 24, 2012, by and among the Dearborn Senior Lender, the Dearborn Subordinated Lender, and Dearborn Retail.

F.   Other Security Documents.   For purposes of this section F, the Debtors have represented that:

1.   Prepetition South Wells Financing Documents.  The Wells Parking Lot is encumbered by that certain Fourth Mortgage and Security Agreement with Assignment of Rents (the "*South Wells Mortgage*"), dated March 14, 2001, and executed by South Wells and certain affiliated entities (collectively, the "*River City Entities*"), in favor of River City Investors, LLC, a Michigan limited liability company (the "*South Wells Lender*"). The South Wells Mortgage secures that certain Secured Promissory Note (the "*South Wells Note*") dated March 14, 2001, in the original principal amount of $2,000,000, executed by each of the River City Entities in favor of the South Wells Lender.  The outstanding principal balance of the South Wells Note as of the Initial Petition Date was approximately $3.3 million, plus accrued interest, fees, and costs (collectively, the "*South Wells Debt*").

2.   Security Granted to Non-Debtor Lender.  Upon information and belief, on or about May 15, 2013, The Acquest Group, LLC ("*Acquest*"), an entity that has the same ultimate owner as the Debtors, executed that certain promissory note (the "*Acquest Note*") in favor of CSV Funding, LLC (the "*Acquest Lender*") in the original principal amount of $2,000,000.  The Acquest Lender required that (i) La Salle Commercial grant to it a security interest in the La Salle

---

[3]   The Dearborn Senior Security Documents and the Dearborn Subordinated Security Documents shall be collectively referred to herein as the "*Dearborn Prepetition Security Documents*."

Property pursuant to (a) that certain Mortgage and Security Agreement, dated May 15, 2013, executed by La Salle Commercial in favor of the Acquest Lender (the "*La Salle Mortgage*") and (b) that certain Assignment of Rents and Leases dated May 15, 2013, executed by La Salle Commerical in favor of the Acquest Lender (together with the La Salle Mortgage, the "*La Salle Security Documents*"); and (ii) Lake Dearborn pledge its ownership interests in Dearborn Retail pursuant to that certain Pledge and Security Agreement dated May 15, 2013 executed by Lake Dearborn in favor of the Acquest Lender.

        3.    <u>The La Salle Condo Association Liens</u>.  The LaSalle Private Residences Condominium Association (the "*La Salle Condo Association*") has asserted an alleged lien against the second floor atrium commercial parcel (PIN 17-04-221-047-000), the interior ground floor commercial parcel (PIN 17-04-221-050-0000), and twenty-six (26) parking space units located at 1212 North LaSalle, Chicago Illinois (collectively, the "*LaSalle Property*") pursuant to (i) that certain Grant and Reservation of Easements Pertaining to the Premises Commonly Known as 1212 North LaSalle, Chicago Illinois filed with the Cook County Recorder of Deeds on April 5, 1993, identified as document number 93247586, against the second floor atrium commercial parcel and interior ground floor commercial parcel; and (ii) that certain Declaration of Condominium Ownership for the LaSalle Private Residences Condominium filed with the Cook County Recorder of Deeds on April 5, 1993, identified as document number 93247587, and 765 ILCS 605/9(g)(1) against the twenty-six (26) parking space units located at the La Salle Property (collectively, the "*La Salle Condo Association Liens*"). The La Salle Condo Association filed a proof of claim in La Salle Commercial's Chapter 11 Case for $87,068.66, based on Claim for Lien filed with the Cook County Recorder of Deeds on June 22, 2010, identified as document number 1017318051, against the second floor atrium commercial parcel (PIN 17-04-221-047-0000).

    4. <u>Tax Lien on La Salle Property</u>.  The Debtors believe that La Salle Commercial owes the Cook County Treasurer unpaid property taxes in the amount of $45,625.52.  While the Cook County Treasurer has not filed a proof of claim in these cases, such unpaid taxes may give rise to a statutory lien on the La Salle Property (the "*La Salle Tax Lien*").

  G. <u>DIP Loan</u>.  Subject to, among other things, the entry of this Interim Order and the other conditions precedent set forth in the DIP Term Sheet, the DIP Lender is willing to provide a debtor-in-possession loan (the "*DIP Loan*") to the Debtors pursuant to the terms of the DIP Term Sheet.  Unless otherwise specified, all capitalized terms relating to the terms of the DIP Term Sheet used without definition shall have the respective meanings given such terms in the DIP Term Sheet.  In the event of any conflict between the terms and provisions of this Interim Order and the DIP Term Sheet, the terms and provisions of this Interim Order shall control.

  H. <u>No Other Sources of Funds</u>.  Due to the Debtors' financial condition, and after diligent efforts to obtain postpetition financing from other financial institutions, the Debtors are unable to obtain postpetition financing in the form of unsecured credit allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code or unsecured credit allowable under §§ 364(a) and 364(b).  The Debtors are unable to obtain secured credit pursuant to § 364(c) on terms and conditions more favorable to their estates than those offered by the DIP Lender, as evidenced by this Interim Order and the DIP Term Sheet.  The Debtors are also unable to obtain secured credit that does not require the granting of a priming lien under § 364(d)(1) on certain of the Debtors' properties.

  I. <u>Adequate Protection for Priming Liens</u>.  The Debtors are not required to provide the Acquest Lender adequate protection based on a high likelihood that an adversary proceeding to avoid the Acquest Lender's alleged liens in the La Salle Property would be successful.  The

4826-3349-5317, v.  8       7

Debtors have shown that the relief requested in the Motion and granted in this Interim Order is sufficient to adequately protect any interest of the Acquest Lender in the La Salle Property.

J. <u>Good Faith</u>. The terms of DIP Loan, pursuant to the DIP Term Sheet and contemplated herein, have been negotiated at arm's length with all parties represented by experienced counsel, are fair and reasonable under the circumstances, are for reasonably equivalent value and fair consideration, are enforceable in accordance with their terms and have been entered into in good faith. Any credit extended and loans made to the Debtors by the DIP Lender pursuant to the DIP Term Sheet shall be deemed to have been extended in good faith, as that term is used in § 364(e) of the Bankruptcy Code.

K. <u>Cause Shown</u>. Good cause has been shown for the entry of this Interim Order. Among other things, entry of this Interim Order will minimize disruption of the Debtors' businesses as going concerns, will allow payments of compensation to employees, will preserve and maintain the assets of their estates, will increase the possibility of a successful reorganization of the Debtors, and will avoid immediate and irreparable harm to, and is in the best interests of, the Debtors, their creditors, and their estates.

L. <u>Factual Findings/Legal Conclusions</u>. Each of the foregoing findings by the Court will be deemed a finding of fact if and to the full extent that it makes and contains factual findings and a conclusion of law if and to the full extent that it makes and contains legal conclusions.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. <u>Authorization to Borrow</u>. The Motion is granted in accordance with the terms of this Interim Order. The Debtors are authorized to enter into or assume, as applicable, the following documents (collectively, the "*DIP Loan Documents*") and to borrow money and perform their obligations thereunder (the "*DIP Obligations*") in accordance with the terms thereof, and any such

documents shall be incorporated as part of this Interim Order and shall be deemed binding on and enforceable against the Debtors, their estates, and their respective successors and assigns: (a) the DIP Term Sheet, in substantially the form attached to the Motion and (b) all such financing statements, notices, schedules, other security agreements, deeds of trust, mortgages, instruments, guarantees, subordination agreements, intercreditor agreements, acceptance agreements, and documents as may be necessary or required (1) to evidence their obligations to the DIP Lender, (2) to consummate the terms and provisions of the Motion and this Interim Order, and (3) to evidence perfection of the liens and security interests to be given to the DIP Lender, whether hereinbefore or hereafter executed and delivered by or on behalf of any or all of the Debtors.

2. The Debtors are hereby authorized to borrow thereunder up to an aggregate principal amount of $600,000, all in accordance with the terms of this Interim Order and the DIP Loan Documents.

3. Interest, Fees, and Costs. All interest, fees and costs, and expenses of the DIP Loan shall be due and earned upon the closing of the DIP Loan shall be included as part of the principal balance of the DIP Loan. The return to the DIP Lender is based on an interest rate of 13% per annum and fees in the amount of 15% of the amount of the DIP Loan.

4. Security for DIP Obligations. The DIP Obligations shall be secured by, and the DIP Lender is hereby granted pursuant to §§ 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, liens on all DIP Collateral (as that term is defined in the DIP Motion), which liens will have the following priority: (a) pursuant to 11 U.S.C. § 364(d)(1), first priority and senior to all existing liens in and to the La Salle Property, but subordinate to the La Salle Condo Association Liens and the La Salle Tax Lien (to the extent such liens are valid); (b) first priority, under 11 U.S.C. § 364(c)(2), in and to all DIP Collateral that is not subject to any valid, perfected, enforceable, and

non-avoidable lien in existence as of the Initial Petition Date or the IES Petition Date, as applicable, and (c) junior priority, under 11 U.S.C. § 364(c)(3), in and to all DIP Collateral that is subject to any valid, perfected, enforceable, and non-avoidable lien in existence as of the Initial Petition Date or the IES Petition Date, as applicable; _provided_, _however_, that the liens granted hereby shall be subject to the Carve-Out (as defined in Paragraph 6 below). "DIP Collateral" shall mean all of the "Property" (defined in the DIP Term Sheet set forth in Exhibit A to the Motion) owned by each of the Debtors, but in no event shall the DIP Collateral include any avoidance claims under chapter 5 of the Bankruptcy Code ("*Avoidance Actions*"). Nothing herein shall be construed to divest any of the Debtors of control over the exercise or non-exercise of the rights or powers under the Bankruptcy Code that may give rise to recoveries under Avoidance Actions. For the avoidance of doubt, the liens and security interests granted to the DIP Lender pursuant to this Interim Order shall be junior in priority to any valid liens and security interests held by (i) the Dearborn Senior Lender pursuant to the Dearborn Senior Security Documents; (ii) the Dearborn Subordinated Lender pursuant to the Dearborn Subordinated Security Documents; (iii) the South Wells Lender pursuant to the South Wells Mortgage; and (iv) the La Salle Condo Association pursuant to the La Salle Condo Association Liens.

5.      Perfection of New Liens.  All liens and security interests on or in the DIP Collateral granted to the DIP Lender by this Interim Order and the DIP Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers, or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of section 362 of the Bankruptcy Code, the DIP Lender may, at its sole option, file or record or cause the Debtors to execute, file, or record

such UCC financing statements, notices of liens and security interests, mortgages, and other similar documents or obtain landlord or warehousemen lien waivers or other third party consents as the DIP Lender may require. The DIP Lender may (in its discretion) but shall not be required to file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which any of the Debtors has real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of the DIP Lender's interests in the DIP Collateral.

6. <u>Carve-Out</u>. The DIP Lender's liens on and security interests in the DIP Collateral and any administrative claims the DIP Lender may be entitled to under the Bankruptcy Code shall be subject only to (a) the payment of any unpaid fees payable pursuant to 23 U.S.C. § 1930 and any unpaid fees payable to the Clerk of this Court or the United States Trustee, and (b) amounts payable on behalf of fees and expenses reflected in the Approved Budget (as defined below), which have been or will be accrued by Goldstein & McClintock LLLP, the Debtors' bankruptcy counsel (the "*Debtor Professionals*") (the amounts set forth in clauses (a) and (b) above are collectively referred to as the *Carve-Out*"). Notwithstanding the foregoing, the Debtors shall be permitted to pay administrative expenses of the kind specified in 11 U.S.C. §§ 330 and 331, as the same may be due and payable, and the same shall not reduce the Carve-Out.

7. <u>Professional Fee Escrow</u>. Commencing immediately upon receipt of such funds from the DIP Lender, the Debtors shall transfer cash in amounts sufficient to satisfy the professional fees set forth up to the current week in the Approved Budget to a professional-fee escrow account held by the Debtor Professionals (the "*Professional Fee Account*") for such professionals' benefit, to be applied to the allowed fees and disbursements of the Debtor Professionals pursuant to one or more orders of the Court, including any interim compensation

procedures approved by the Court.  Each payment to the Professional Fee Account made pursuant to this paragraph shall be deemed to be, and treated as if such payment was, a security retainer paid to the Debtor Professionals as of, and *nunc pro tunc* to, the Initial Petition Date, free and clear of all liens, claims, encumbrances, and interests.  Any amounts in the Professional Fee Account which have not been paid to the Debtor Professionals in accordance with orders of this Court shall be maintained in the Professional Fee Account until a final, unappealable order has been entered by the Court determining the amount of the Debtor Professionals' allowed fees and disbursements in the Chapter 11 Cases, at which point any excess funds in the Professional Fee Account shall be returned to the Debtors' estates.

8. <u>Budget; Use of Loan; and Collateral Proceeds</u>.  The DIP Lender has reviewed and approved the budget attached as <u>Exhibit A</u> to this Order setting forth by line item all projected cash disbursements for the proceeds of the DIP Loan (the "*Initial Approved Budget*").  The Initial Approved Budget may be modified or supplemented from time to time by additional budgets as required by the DIP Term Sheet (covering any time period covered by a prior budget or covering additional time periods) to which the DIP Lender and the Debtors agree in their respective sole discretion (each such additional budget, a "*Supplemental Approved Budget*").  The aggregate of all items approved by the DIP Lender in the Initial Approved Budget and any and all Supplemental Approved Budgets (acceptable to the DIP Lender in its reasonable discretion) shall constitute the "*Approved Budget*."  The Debtors' cash disbursements listed on the Approved Budget with respect to the line items for "U.S. Trustee Fees" and "Real Property insurance" or any individual item on the schedule for "Corporate Overhead" shall not exceed 110% of the amount budgeted on an aggregate basis; any other line item on the Approved Budget shall not exceed shall not exceed the amount budgeted on an aggregate basis.  To the extent not previously paid by the Debtors, the

Debtors are authorized to pay accrued but unpaid amounts in the Approved Budget related to prior weekly periods in subsequent weekly periods.

9. <u>Senior Lien Escrow</u>.  The DIP Lender has required, and the Debtors shall maintain, an escrow account in the amount of $132,694.18 (the "*Senior Lien Escrow*") to provide funds to satisfy the La Salle Condo Association Liens and the La Salle Tax Lien (to the extent such liens are valid, unavoidable liens on the La Salle Property).  To the extent either the La Salle Condo Association Liens or the La Salle Tax Lien is allowed as a secured claim against the La Salle Property, the Debtors shall be authorized to transfer funds from the Senior Lien Escrow to such claimants to satisfy such liens.  The Senior Lien escrow shall be funded from: (a) the relevant line items in the Approved Budget; and (b) a non-interest bearing loan from Nicholas Gouletas (the Debtors' President) to the Debtors in the amount of $40,772.18 (the "*Gouletas Loan*"), which the Debtors are hereby authorized to borrow as an post-petition administrative expense pursuant to sections 363(b) and 503(b)(1) of the Bankruptcy Code.

10. <u>Authorized Signatories</u>.  The signature of any of Mark S. Goldstein and/or Nicholas S. Goutelas, appearing on any DIP Loan Documents executed after the entry of this Interim Order shall bind the Debtors.  No board of director or other approval shall be necessary.

11. <u>Order Binding on Successors</u>.  The provisions of this Interim Order shall be binding upon and inure to the benefit the DIP Lender, the Debtors, and the Debtor Professionals, and their respective successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtors' estates or of any estate in any successor case).  Except as otherwise explicitly set forth in this Interim Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Interim Order or the DIP Loan Documents.

12. <u>Safe Harbor</u>. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to obtain credit on the terms and conditions upon which the Debtors and the DIP Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under section 364, and is, therefore, subject to the protections contained in section 364(e) of the Bankruptcy Code.

13. <u>Subsequent Hearing: Procedure for Objections; and Entry of Final Order</u>. The hearing to consider entry of a Final Order before this Court is set for _____ on November ____, 2013 (the "*Final Hearing*"). The Debtors shall serve by overnight mail, facsimile transmission, or CM/ECF service, within three (3) business days of entry of the Interim Order by the Court, a copy of the Interim Order and a notice of the Final Hearing (collectively, the "*Final Hearing Notice*") to consider entry of the Final Order on the date established by the Court to the Notice Parties. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file objections, which objections shall: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; and (iii) be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois no later than three (3) business days before the Final Hearing and served upon the following parties so as to be actually received not less than three (3) business days before the Final Hearing: (a) the Office of the United States Trustee for the Northern District of Illinois, 219 South Dearborn Street, Room 873, Chicago, Illinois 60604, Attn: Gretchen Silver; (b) counsel to the Debtors, Goldstein & McClintock LLLP, 208 S. LaSalle Street, Suite 1750, Chicago, Illinois 60604, Attn: Harold D. Israel; (c) the DIP Lender, c/o Prudential Rubloff Commercial Finance, 980 N. Michigan Ave., 9th Floor, Chicago, Illinois 60611, Attn: Rob Powell; (d) counsel to the Dearborn Senior Lender, Carlson Dash, LLC, 216 S. Jefferson Street,

Suite 504, Chicago, Illinois 60661, Attn: Kurt M. Carlson and Colleen E. McManus; (e) counsel to the Dearborn Subordinated Lender, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, Illinois 60661, Attn: Paige E. Barr; (f) the South Wells Lender, River City Investors, LLC, 3000 Town Center, Suite 2900, Southfield, Michigan 48075; (g) counsel to the LaSalle Private Residences Condominium Association, Arnstein & Lehr LLP, 120 S. Riverside Plaza, Suite 1200, Chicago, Illinois 60606, Attn: Kevin H. Morse; and (h) each of the creditors included on the lists filed under Rule 1007(d) for all of the Debtors on a consolidated basis.

14. <u>Objections Overruled</u>.  Except to the extent specifically set forth herein, all objections to the entry of this Interim Order are hereby overruled.

15. <u>Order Effective</u>.  This Interim Order shall be effective as of the date of signature by the Court.  This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

IT IS SO ORDERED.

ENTERED:

Dated:  November ___, 2013

_____
United States Bankruptcy Judge

# **<u>EXHIBIT A</u>**

**Lake Dearborn, LLC, *et al.***
**Case No 13-36813**
**Budget**
(August 19, 2013 – November 3, 2013)

| Expense | 8/19 - 8/25[1] | 8/26 - 9/1[2] | 9/2 -9/8 | 9/9 - 9/15 | 9/16 - 9/22 | 9/23 - 9/29 | 9/30 - 10/6 | 10/7 - 10/13 | 10/14 - 10/20 | 10/21 - 10/27 | 10/28 - 11/3 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Employee salaries | $ - | $ 10,563.00[3] | $ 14,788.00 | $ 14,788.00 | $ 14,788.00 | $ 14,788.00 | $ 14,788.00 | $ 14,788.00 | $ 14,788.00 | $ 14,788.00 | $ 14,788.00 |
| Corporate overhead | $ - | $ 5,880.00[4] | $ 8,232.00 | $ 8,232.00 | $ 8,232.00 | $ 8,232.00 | $ 8,232.00 | $ 8,232.00 | $ 8,232.00 | $ 8,232.00 | $ 8,232.00 |
| Bankruptcy legal fee escrow (Goldstein & McClintock LLLP) | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 |
| U.S. Trustee Fees[5] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 5,000.00 |
| Real property insurance | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 4,455.00 |
| Condo Association Escrow[6] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 87,068.66 |
| Tax Escrow[7] | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 4,853.34 |
| Total | $ 25,000.00 | $ 41,443.00 | $ 48,020.00 | $ 48,020.00 | $ 48,020.00 | $ 48,020.00 | $ 48,020.00 | $ 48,020.00 | $ 48,020.00 | $ 48,020.00 | $ 149,397.00 |

---

[1] On August 19, 2013, Lake Dearborn, LLC; La Salle Commercial, LLC; 800 South Wells Phase II, LLC; Dearborn Retail, LLC; Dearborn Residential, LLC; and DR Dearborn Investment, LLC filed voluntary chapter 11 petitions for relief under title 11 of the United States Code.

[2] On August 28, 2013, Invsco Employee Services, Inc. filed a voluntary chapter 11 petition for relief under title 11 of the United States Code.

[3] Amount equal to 5/7 of the weekly amount due to employees, as Invsco Employee Services filed on August 28, 2013.

[4] Amount equal to 5/7 of the weekly amount attributable to corporate overhead, as Invsco Employee Services filed on August 28, 2013.

[5] Going-forward U.S. Trustee Fees to supplement the amounts that will be paid out of the cash collateral of the Debtors' various lenders.

[6] This amount shall be used to fund the portion of the Senior Lien Escrow (as defined in the Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Scheduling a Final Hearing; and (III) Approving Notice Procedures (the "*DIP Financing Order*")) related to the LaSalle Condo Association Liens (as defined in the DIP Financing Order).

[7] This amount, plus the proceeds of the Gouletas Loan (as defined in the DIP Financing Order), shall be used to fund the Senior Lien Escrow (as defined in the DIP Financing Order) related to the LaSalle Tax Lien (as defined in the DIP Financing Order).

# Lake Deaborn, LLC, et al.
# Case No. 13-36813
# Employee Salaries

| Employee | Position | Annual Salary | Annual Salary with Employer Taxes[1] | Monthly Salary[2] | Monthly Salary with Employer Taxes[3] | Weekly Salary[4] | Weekly Salary with Employer Taxes[5] |
|---|---|---|---|---|---|---|---|
| Mark Goldstein | CFO | 200,000 | 212,000 | 16,667 | 17,667 | 3,846 | 4,076 |
| John Markunas | Controller | 156,000 | 165,360 | 13,000 | 13,780 | 3,000 | 3,180 |
| Peter Maciuba | Accountant | 100,000 | 106,000 | 8,333 | 8,833 | 1,923 | 2,038 |
| Jose Alexander | Asset Manager | 117,500 | 124,550 | 9,792 | 10,379 | 2,260 | 2,395 |
| Tom Rossini | Construction Manager | 85,000 | 90,100 | 7,083 | 7,508 | 1,635 | 1,733 |
| Julie Rossini | Office Manager | 67,000 | 71,020 | 5,583 | 5,918 | 1,288 | 1,366 |
| **TOTALS** | | **$ 725,500** | **$ 769,030** | **$ 60,458** | **$ 64,085** | **$ 13,952** | **$ 14,788** |

---

[1] Amount equal to annual salary plus 6%.
[2] Amount equal to annual salary divided by 12.
[3] Amount equal to annual salaries with employer taxes divided by 12.
[4] Amount equal to annual salary divided by 52.
[5] Amount equal to annual salary with employer taxes divided by 52.

# Lake Dearborn, LLC, et al.
# Case No. 13-36813
# Corporate Overhead

| Category | Annual | Monthly | Weekly |
|---|---:|---:|---:|
| Assessments and taxes on corporate office space | $ 148,584.00 | $ 12,382.00 | $ 2,857.00 |
| Employee health and dental insurance (estimated) | $ 122,400.00 | $ 10,200.00 | $ 2,353.00 |
| Workers' compensation insurance (estimated) | $ 20,004.00 | $ 1,667.00 | $ 384.00 |
| Electricity | $ 3,000.00 | $ 250.00 | $ 57.00 |
| Postage | $ 1,200.00 | $ 100.00 | $ 23.00 |
| Internet connectivity | $ 28,800.00 | $ 2,400.00 | $ 553.00 |
| Cell phones | $ 9,600.00 | $ 800.00 | $ 184.00 |
| Office phones | $ 10,800.00 | $ 900.00 | $ 207.00 |
| IT support | $ 45,600.00 | $ 3,800.00 | $ 876.00 |
| Copier lease | $ 38,400.00 | $ 3,200.00 | $ 738.00 |
| **TOTAL CORPORATE OVERHEAD** | **$ 428,388.00** | **$ 35,699.00** | **$ 8,232.00** |