## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Case No. 13-36813 (JPC) |
| LAKE DEARBORN, LLC, *et al.*,[1] | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) | **Hearing: December 5, 2013, at 9:30 a.m.** |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on Thursday, December 5, 2013, at 9:30 a.m., the undersigned shall appear before the Honorable Jacqueline P. Cox, United States Bankruptcy Judge, in the courtroom usually occupied by her, United States Courthouse, 219 South Dearborn Street, Courtroom 680, Chicago, Illinois, and then and there present the *Debtors' Amended Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Scheduling a Final Hearing; and (III) Approving Notice Procedures*, a copy of which is attached hereto and herewith served upon you.

Dated:  December 2, 2013

**LAKE DEARBORN, LLC, et al.**

By: /s/ Matthew E. McClintock

**GOLDSTEIN & MCCLINTOCK, LLLP**
Harley J. Goldstein
Harold D. Israel
208 S. LaSalle Street, Suite 1750
Chicago, Illinois  60604
Telephone: (312) 337-7700
Facsimile:  (312) 277-2305

*Counsel for the Debtors and
Debtors in Possession*

---

1    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Lake Dearborn, LLC (3155); (ii) Dearborn Residential, LLC (5500); (iii) Dearborn Retail, LLC (5402); (iv) DR Dearborn Investment, LLC (7511); (v) 800 South Wells Phase II, LLC (0202); (vi) La Salle Commercial, LLC (6805); and (vii) Invsco Employee Services, Inc. (9657).

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew E. McClintock, an attorney, do hereby certify that on December 2, 2013, I caused true and correct copies of the foregoing ***Notice of Motion*** and ***Debtors' Amended Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Scheduling a Final Hearing; and (III) Approving Notice Procedures*** to be filed with CM/ECF the Court's electronic filing system and further served upon the parties in the attached service list as indicated therein.

Dated: December 2, 2013                                    /s/ Matthew E. McClintock

**Via CM/ECF Service**

Paige E Barr on behalf of Creditor Affordable Lawless II, LLC
paige.barr@kattenlaw.com

Whitman H. Brisky on behalf of Creditor Melinda Schwab
wbrisky@mauckbaker.com, WHBCourt@mauckbaker.com;raguilan@mauckbaker.com

Kurt M Carlson on behalf of Creditor The Private Bank & Trust Company
kcarlson@carlsondash.com, knoonan@carlsondash.com

Kurt M Carlson on behalf of Creditor The PrivateBank & Trust Company
kcarlson@carlsondash.com, knoonan@carlsondash.com

Barry A Chatz on behalf of Creditor LaSalle Private Residences Concominium Association
bachatz@arnstein.com, jbmedziak@arnstein.com

David R Doyle on behalf of Creditor CSV Funding LLC
ddoyle@shawfishman.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Colleen E McManus on behalf of Creditor The Private Bank & Trust Company
cmcmanus@carlsondash.com, knoonan@carlsondash.com;jbubacz@carlsondash.com

Colleen E McManus on behalf of Creditor The PrivateBank & Trust Company
cmcmanus@carlsondash.com, knoonan@carlsondash.com;jbubacz@carlsondash.com

Kevin H Morse on behalf of Creditor LaSalle Private Residences Concominium Association
khmorse@arnstein.com

Kevin H Morse on behalf of Debtor Lake Dearborn LLC
khmorse@arnstein.com

Steven B Towbin on behalf of Creditor CSV Funding LLC
stowbin@shawfishman.com

**Via Overnight Delivery and/or Facsimile Transmission**

| | |
|---|---|
| RGB Equities, LLC<br>c/o Rob Powell<br>Prudential Rubloff Commercial Finance<br>980 N. Michigan Avenue, 9th Floor<br>Chicago, IL 60611<br>Fax: 312.364.1398 | River City Investors, LLC<br>c/o Campbell Morgan<br>144 West Maple Rd, Suite 100<br>Birmingham, MI 48009<br>Fax: 248.594.8766 |
| Damien O'Malley<br>c/o Gleason Law Group<br>4653 N. Milwaukee Ave.<br>Chicago, IL 60630<br>Fax: 773.282.4011 | DLA Piper LLP<br>203 N. LaSalle,<br>Suite 1900<br>Chicago, IL 60601<br>Fax: 312.236.7516 |
| Joseph Frosolone Interiors<br>6200 N. Lenox<br>Chicago, IL 60646 | City of Chicago<br>Department of Finance-Water:<br>P.O. Box 6330<br>Chicago, IL 60680-6330<br>Fax: 312.744.0014 |

| | |
|---|---|
| Sala Electrical Services, Inc.<br>1146 W. Columbia<br>Chicago, IL 60626 | Foley & Lardener LLP<br>321 N. Clark St.<br>Suite 2800<br>Chicago, IL 60654<br>Fax: 312.832.4700 |
| TRT Construction LLC<br>15145 Chestnut Lane<br>Oak Forest, IL 60452 | Murphy Hourihane<br>77 West Wacker Dr.<br>Suite 4800<br>Chicago, IL 60601<br>Fax: 312.202.3201 |
| Elzie Higginbottom<br>2850 S. Michigan Ave.<br>Suite 100<br>Chicago, IL 60616<br>Fax: 312.842.0765 | ComEd<br>PO Box 6111<br>Carol Stream, IL 60197<br>Fax: 312.394.2231 |
| SOS Intellectual Security Ltd.<br>4404 South Wentworth<br>Chicago, IL 60609 | 200 N. Dearborn Condo Associates<br>c/o Lieberman Management Services<br>P.O. Box 5723<br>Carol Stream, IL 60197<br>Fax:  312.553.1240 |
| Shefsky & Froelich<br>111 E. Wacker Drive<br>Suite 2800<br>Chicago, IL 60601<br>Fax: 312.527.4011 | Suntimes Media<br>350 N. Orleans Street<br>10th Floor<br>Chicago, IL 60654<br>Fax: 312.644.4519 |
| Goldy Locks Inc.<br>17048 S. Oak Park Ave.<br>Tinley Park, IL 60477<br>Fax: 630.532.5886 | The Carpet Group, Inc.<br>2051 Clavey Rd.<br>Highland Park, IL 60035<br>Fax: 312.223.6417 |
| McGuireWoods, LLP<br>77 W. Wacker Drive<br>Suite 4100<br>Chicago, IL 60601<br>Fax: 312.849.3690 | Cintas Corporation #21<br>P.O. Box #88005<br>Chicago IL 60680-1005<br>Fax: 800.864.3888 |
| Debat Media<br>1349 E. Washington Street<br>Suite 408<br>Des Plaines, IL 60016<br>Fax: 312.944.8877 | Local 1 Welfare & Pension<br>P.O. Box 94431<br>Chicago, IL 60690 |
| Nicholas Gouletas<br>182 West Lake Street, Suite 200<br>Chicago, IL 60601 | Cook County Treasurer's Office<br>118 North Clark Street, Room 112<br>Chicago, IL 60602 |

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 13-36813 (JPC) |
| LAKE DEARBORN, LLC, *et al.*,[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Hearing: Thursday, December 5, 2013, at 9:30 a.m.** |

## DEBTORS' AMENDED MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) SCHEDULING A FINAL HEARING; AND (III) APPROVING NOTICE PROCEDURES

The above-captioned debtors and debtors-in-possession (collectively, the "*Debtors*"), by this amended motion (the "*Motion*"), respectfully seek entry of interim and final orders pursuant to sections 105, 361, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "*Bankruptcy Code*"); Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"); and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "*Local Rules*") (i) authorizing the Debtors to obtain postpetition financing, (ii) scheduling a final hearing, and (iii) approving procedures for providing notice of the interim and final hearings.  In support of this Motion, the Debtors submit the Declaration of Mark Goldstein (the "*Goldstein Declaration*") filed in connection with the Original Motion (as defined herein) [Docket No. 73], and respectfully state as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Lake Dearborn, LLC (3155); (ii) Dearborn Residential, LLC (5500); (iii) Dearborn Retail, LLC (5402); (iv) DR Dearborn Investment, LLC (7511); (v) 800 South Wells Phase II, LLC (0202); (vi) La Salle Commercial, LLC (6805); and (vii) Invsco Employee Services, Inc. (9657).

## JURISDICTION AND VENUE

1.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of the Debtors' chapter 11 cases and this Motion in this district is proper pursuant

to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.       The statutory predicates for the relief requested herein are sections 105, 361, and

364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rule 4001-2.

## BACKGROUND

### A.      General Background

3.       On August 19, 2013 (the "*Initial Petition Date*"), Lake Dearborn, LLC ("*Lake

Dearborn*"); Dearborn Residential, LLC ("*Dearborn Residential*"); Dearborn Retail, LLC

("*Dearborn Retail*"); DR Dearborn Investment, LLC ("*DR Dearborn*"); 800 South Wells Phase

II, LLC ("*South Wells*"); and La Salle Commercial, LLC ("*La Salle Commercial*," and

collectively with Lake Dearborn, Dearborn Residential, Dearborn Retail, DR Dearborn, and

South Wells, the "*Initial Debtors*") each filed a voluntary petition for relief under chapter 11 of

the Bankruptcy Code (the "*Initial Chapter 11 Cases*").

4.       On August 28, 2013 (the "*IES Petition Date*"), Invsco Employee Services, Inc.

("*IES*") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*IES

Chapter 11 Case*," and together with the Initial Chapter 11 Cases, the "*Chapter 11 Cases*").

5.       The Debtors continue to operate their businesses and manage their properties as

debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.       On October 30, 2013, the Debtors filed their original motion (the "*Original

Motion*") seeking entry of interim and final orders pursuant to sections 105, 361, and 364 of the

Bankruptcy Code; Bankruptcy Rules 2002, 4001, and 9014; and Local Rule 4001-2

(i) authorizing the Debtors to obtain postpetition financing, (ii) scheduling a final hearing, and

(iii) approving procedures for providing notice of the interim and final hearings [Docket No. 73].

7.    On November 4, 2013, the Court denied the Original Motion without prejudice

[Docket No. 84], on the basis that the Debtors did not propose to provide adequate protection to

the Acquest Lender (as defined herein) pending resolution of the Debtors' adversary proceeding

to, among other things, avoid the Acquest Lender's purported lien on the La Salle Property (as

defined herein).  As set forth herein, the Debtors now propose to provide adequate protection to

the holders of certain entities that assert prepetition liens, to the extent such liens are valid.

8.    A description of the Debtors' businesses, the circumstances leading to filing the

Chapter 11 Cases, and the Debtors' prepetition debt structure is set forth in the Goldstein

Declaration.

**B.    The Need for Postpetition Financing**

9.    As set forth in the Goldstein Declaration, the Debtors' estates will suffer

immediate and irreparable harm if the Debtors cannot immediately access the funds to be

provided pursuant to the proposed debtor-in-possession financing.  The Debtors need liquidity to

pay wages and other critical expenses and to fund the administrative costs of bankruptcy

reorganization.

10.    The Debtors are unable to obtain adequate debtor-in-possession financing either

as unsecured credit under section 364(a) or (b) of the Bankruptcy Code or allowable as an

administrative expense under section 503(b)(1) of the Bankruptcy Code.  Furthermore, the

Debtors are unable to obtain debtor-in-possession financing without providing a lien to the

proposed Senior DIP Lender (as defined herein) that is senior to existing liens on certain of the

Debtors' property.

11.    Specifically, the Debtors have an immediate need for interim approval of $900,000 of postpetition financing in order to operate in the ordinary course of business. Simply put, the relief sought herein is necessary for the Debtors to meet their financial obligations in order to emerge from chapter 11.

12.    The Debtors have already suffered disruption to their business operations and reorganization efforts as a result of their lack of sufficient liquidity.  Absent this Court's approval of the interim relief sought herein, the Debtors will suffer additional disruption that could jeopardize their ability to successfully reorganize.

13.    The proposed postpetition lenders have agreed to fund the Debtors' continued operations in chapter 11 in exchange for the reasonable protections proposed, including, with respect to the Senior DIP Lender, liens on all or substantially all assets of the Debtors (other than avoidance actions).

## **RELIEF REQUESTED**

14.    The Debtors seek authority to borrow an aggregate of $900,000 in postpetition financing.  Of that, RCB Equities, LLC (the "*Senior DIP Lender*") has agreed to provide a debtor-in-possession loan of $600,000 (the "*Senior DIP Loan*") pursuant to the terms of that certain Letter of Intent and Exhibits (the "*Senior DIP Term Sheet*") dated November 12, 2013, by and among the Debtors and the Senior DIP Lender and attached hereto as <u>Exhibit A</u>.  In addition, Nicholas Gouletas (the Debtors' President) has agreed to supplement the Senior DIP Loan with an additional unsecured non-interest bearing loan (the "*Gouletas Loan*") to La Salle Commercial in the amount of $300,000.[2]

---

[2]    In addition to the interest-free loan Mr. Gouletas is providing, Mr. Gouletas and his daughter, Victoria Gouletas (the Debtors' General Counsel), have both agreed that the proceeds of the postpetition financing contemplated by this Motion shall not be used to pay either of their salaries.

15.     By this Motion, the Debtors seek interim and final orders (respectively, the

"*Interim Order*" and "*Final Order*," and collectively, the "*DIP Orders*"), *inter alia*:[3]

(i)     authorizing, pursuant to section 364 of the Bankruptcy Code, the Debtors to obtain a secured debtor-in-possession loan from the Senior DIP Lender in the amount of $600,000; provided that all borrowings shall be used in accordance with a weekly cash flow forecast, in the form of the budget attached to the Senior DIP Term Sheet (as amended, modified, or supplemented from time to time, the "*Budget*"), including all budgeted additional retainer payments to the Debtors' professionals;

(ii)     authorizing the Debtors to execute, deliver, and enter into any required financing documents in connection with the Senior DIP Loan (the "*Senior DIP Loan Documents*") and to perform such other and further acts as may be necessary, required, or desirable in connection therewith;

(iii)     granting security interests and liens (the "*Senior DIP Liens*") to the Senior DIP Lender pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code with respect to the collateral described in the Senior DIP Term Sheet (the "*Senior DIP Collateral*") to secure the amounts advanced under the Senior DIP Loan; provided that such interests and liens are subject to the Carve-Out described herein;

(iv)     authorizing, pursuant to section 364 of the Bankruptcy Code, La Salle Commercial to obtain a non-interest bearing unsecured debtor-in-possession loan in the amount of $300,000, which shall be entitled to administrative expense status pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code; provided that such administrative expense shall be subordinate to all other administrative claims against La Salle Commercial and that all borrowings shall be used in accordance with the Budget;

(v)     scheduling a final hearing (the "*Final Hearing*"), to be held no later than fourteen (14) days after entry of the Interim Order, to consider entry of the Final Order; and

(vi)     approving certain notice procedures for the hearings hereon.

## SUMMARY OF PRINCIPAL TERMS OF SENIOR DIP LOAN

16.     The Debtors and the Senior DIP Lender engaged in good faith and extensive

arm's-length negotiations that culminated in the Senior DIP Term Sheet.[4]

---

[3]     Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Senior DIP Term Sheet.

17.    The significant terms of the Senior DIP Term Sheet are as follows:

| | |
|---|---|
| **Lender:** | RCB Equities, LLC |
| **Borrowers:** | Lake Dearborn, LLC; Dearborn Residential, LLC; Dearborn Retail, LLC; DR Dearborn Investment, LLC; 800 South Wells Phase II, LLC; La Salle Commercial, LLC; and Invsco Employee Services, Inc. |
| **Amount of Loan:** | $600,000 |
| **Term of Loan:** | 1 year from Closing Date (the "*Maturity Date*") |
| **Interest and Fees:** | Payment in kind.  All interests, fees, and costs will total $200,000 in the aggregate and will be due on the Closing Date.  The Debtors also agree to pay legal fees and costs incurred in connection with the Senior DIP Lender's enforcement of remedies under the Senior DIP Loan Documents, and such fees and costs will be incorporated into the principal balance of the Senior DIP Loan.  The return to the Senior DIP Lender is based on an interest rate of 13% per annum and fees in the amount of 15% of the amount of the Senior DIP Loan. |
| **Use of Proceeds:** | Proceeds of the Senior DIP Loan will be used in accordance with Budget, subject to permitted variances, including the retainer amounts contained therein and accrued but unpaid amounts in the Budget related to prior weekly periods. |
| **Senior DIP Liens:** | The Debtors propose to grant to the Senior DIP Lender (subject to the Carve-Out) perfected security interests and liens on the Senior DIP Collateral (excluding any avoidance actions under chapter 5 of the Bankruptcy Code). |
| **Carve-Out:** | All Senior DIP Liens in favor of the Senior DIP Lender will be subject to a carve-out of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930, and (ii) amounts payable on behalf of fees and expenses reflected in the Budget which have been or will be accrued by Goldstein & McClintock LLLP, the Debtors' bankruptcy counsel. |
| **Priority of Liens:** | The Senior DIP Liens are subject to valid, perfected, and nonavoidable prepetition liens and perfected postpetition liens as permitted by Section 546(b) of the Bankruptcy Code, except for Senior DIP Liens on the La Salle Property,[5] which shall be first-priority and senior to all existing liens. |

---

[4]    This summary is qualified in its entirety by reference to the specific provisions of the Senior DIP Term Sheet and any order approving this Motion.  The terms of the order approving this Motion (first), the Senior DIP Term Sheet (second), shall govern in the event of any inconsistency between this summary and those documents.

[5]    The La Salle Property consists of:  (i) a second floor atrium commercial parcel (PIN 17-04-221-047-000); (ii) the interior ground floor commercial parcel (PIN 17-04-221-050-0000); and (iii) twenty-six (26) parking space units located at 1212 North LaSalle, Chicago, Illinois.

| Conditions Precedent: | (i)      Court approval of the Senior DIP Loan and entry of the Interim Order, including the approval of any priming liens requested by this Motion;<br>(ii)      The Debtors' clear and absolute title to the Senior DIP Collateral except for the liens identified in the Senior DIP Term Sheet; and<br>(iii)      No Events of Default occurring prior to loan closing. |
|---|---|
| Events of Default: | In addition to general satisfaction of the terms of the Senior DIP Term Sheet, any of the following shall constitute an "Event of Default" subject to grace, notice, and cure periods to be agreed as applicable:<br><br>(i)      Reversal, modification, amendment, or stay of the Interim Order or the Final Order that has not been accepted by Senior DIP Lender;<br>(ii)      Destruction or damage to the Project deemed substantial by the Senior DIP Lender;<br>(iii)   Material and adverse change in the Debtors' financial or the Project's operating condition; and<br>(iv)      Discovery of any material misrepresentation in Debtors' application, submissions, or representations. |

18.     The terms of the Gouletas Loan are set forth in paragraph 15(iv) above, and shall be used to fund the Senior Lien Escrow (as defined herein).[6]

## COMPLIANCE WITH LOCAL RULE 4001-2

19.     Under the Local Rules, the Debtors are required, in a financing motion, to highlight certain extraordinary provisions included in the proposed Interim Order and Senior DIP Term Sheet, identify the location of such provisions, and justify the inclusion of such provisions.

20.     The Debtors propose to give the Senior DIP Lender a first-priority lien, senior to all existing liens in and to the La Salle Property, including liens (to the extent such liens are valid) asserted by the Acquest Lender, The LaSalle Private Residences Condominium Association (the "*La Salle Association*"), and the Cook County Treasurer (although funds sufficient to cover secured claims asserted by the La Salle Association and the Cook County Treasurer will be maintained in a cash escrow account). This "priming" provision is set forth in

---

[6]      The terms of the order approving this Motion shall govern in the event of any inconsistency regarding the Gouletas Loan.

paragraph 4 on pages 9-10 of the proposed Interim Order and paragraph 1 of Exhibit A to the

Senior DIP Term Sheet.  Such provision is justified in light of the Debtors' urgent need for

liquidity and their inability to obtain adequate alternative financing that does not require the

granting of a "priming" lien on the La Salle Property.

21.     The Debtors are not proposing that the postpetition loan from Mr. Gouletas prime

any lienholder.  To the contrary, that loan is not secured but is instead payable as an

administrative expense of La Salle Commercial's estate subordinate to other administrative

claims.

## BASIS FOR RELIEF

**A.      The Debtors' Immediate Need for Postpetition Financing**

22.     As set forth in the Goldstein Declaration, the Debtors require expedited relief to

avoid the immediate and irreparable harm that will be suffered by these estates if the Debtors do

not obtain the liquidity needed to sustain the business, including to pay wages and critical

expenses.

23.     Local Rule 4001(b) provides that the Court may grant interim relief when it is

necessary to avoid immediate and irreparable harm to the estate.  Bankruptcy Rule 4001(c)

provides that a final hearing on a motion to obtain credit pursuant to section 364 of the

Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such

motion.  Upon request, however, this Court is empowered to conduct an interim expedited

hearing on the motion at which time it may authorize a debtor to obtain credit to the extent

necessary to avoid immediate and irreparable harm to a debtor's estate.  The Debtors request that

the Court conduct a hearing and enter the Interim Order as soon as practicable in order to avoid

immediate and irreparable harm to the Debtors' estates.

24.    The Debtors have determined, in consultation with their advisors, that they are not able to obtain alternative financing on terms superior to the terms of the financing proposed herein, and such terms are market terms that represent the best terms reasonably available to the Debtors. This Court and courts in other districts have granted the requested relief in similar chapter 11 cases.  *See, e.g*, *In re Olde Prairie Block Owner, LLC*, 448 B.R. 482, 497 (Bankr. N.D. Ill. 2011); *In re Ryan Int'l Airlines, Inc.*, Case No. 12-80802 (Bankr. N.D. Ill. Mar. 21, 2012) (Docket No. 89) (granting secured liens to DIP lender after finding that debtors "surveyed various sources of post-petition cash" and "were unable to find a lender to extend credit").

**B.     The Proposed DIP Loans Should Be Authorized**

25.    Section 364 of the Bankruptcy Code authorizes this Court to allow the Debtors to obtain postpetition financing in the manner described in this Motion.  As described above, as security for all borrowings under the Senior DIP Loan, the Debtors propose to grant to the Senior DIP Lender (subject to the Carve-Out) perfected security interests and liens on the Senior DIP Collateral (excluding any avoidance actions under chapter 5 of the Bankruptcy Code), including a first priority "primed" security interest and lien in the La Salle Property.

26.    The granting of security interests and liens is governed by sections 364(c) and (d) of the Bankruptcy Code.  Specifically, section 364(c) provides:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> (2)     secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3)     secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).  Further, under section 364(d):

The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A)     the trustee is unable to obtain such credit otherwise; and

(B)     there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

27.     As set forth in the Goldstein Declaration, based on the nature of the Debtors' businesses and the type of financing available in the industry for businesses such as the Debtors', the Debtors are:

(i)      unable to obtain adequate unsecured financing;

(ii)     unable to obtain unsecured credit or debt (allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code) in an amount sufficient and readily available to maintain ongoing operations and continue their reorganization efforts; and

(iii)    unable to obtain adequate secured credit without granting a primed, first-priority lien on the La Salle Property.

Accordingly, the Debtors satisfy sections 364(c) and 364(d)(1) of the Bankruptcy Code, and the Court is authorized to grant the Senior DIP Lender a priming lien on the Senior DIP Collateral.

28.     As set forth in the Goldstein Declaration, the Debtors and their professionals have contacted numerous lenders in connection with the proposed financing, including the Debtors' prepetition senior lenders.  In total, over twenty lenders have executed confidentiality agreements to receive information with respect to requested postpetition financing.  Additional information was provided to at least 15 prospective lenders.  The proposed lenders were the *only* lenders to offer firm commitments to provide postpetition financing.  The other potential lenders either affirmatively declined the opportunity to provide a DIP loan, did not issue a commitment letter, or have not followed up with the Debtors prior to the date hereof.  The Debtors have thus

determined that the terms of financing proposed by this Motion are the most favorable available under the circumstances.

29.    This is particularly true given:  (i) that the Debtors do not have unencumbered cash and are without sufficient liquidity to pay their employees and employee-related expenses as well as restructuring-related expenses; (ii) that without the postpetition financing, the Debtors lack the resources to develop a strategy to emerge from chapter 11; (iii) the lack of response to the Debtors' request for financing contemplated by the proposed DIP loans; and (iv) that the Debtors cannot survive through use of unencumbered property or solely through the use of cash collateral.  The Debtors negotiated the best financing arrangements that they can reasonably expect under the circumstances.  The fees are customary and reasonable.

30.    The Debtors' efforts to obtain postpetition financing therefore satisfy the statutory requirement of section 364(c) of the Bankruptcy Code.  *See Olde Prairie Block*, 448 B.R. at 485 (considering testimony from debtor's developer in determining that debtor was unable to obtain unsecured credit to pay postpetition arrearage in order to prevent immediate and irreparable harm to estate); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (approving section 364(c) financing facility and holding that the debtor made reasonable efforts to obtain less onerous terms where it approached four lending institutions, was rejected by two, and selected the least onerous financing option from the remaining two lenders).

31.    Consequently, after considering the alternatives and taking into account the costs of postpetition financing and the need to obtain financing on a timely basis, the Debtors determined in their business judgment to accept the lenders' proposals as the best option for the Debtors.  The Debtors believe that the terms described in this Motion are competitive in the marketplace, address the Debtors' working capital and liquidity needs, and present the best

option available to enable the Debtors to continue to operate their business and maximize the value of their assets.

**C.    The Alleged Interest of the Acquest Lender Will Be Adequately Protected by the Granting of Replacement Liens**

32.    On or about May 15, 2013, The Acquest Group, LLC ("*Acquest*"), a non-Debtor entity that has the same ultimate owner as the Debtors, executed that certain promissory note (the "*Acquest Note*") in favor of CSV Funding, LLC (the "*Acquest Lender*") in the original principal amount of $2,000,000. The Acquest Lender required that La Salle Commercial grant to it a security interest in the La Salle Property pursuant to: (a) that certain Mortgage and Security Agreement, dated May 15, 2013, executed by La Salle Commercial in favor of the Acquest Lender (the "*La Salle Mortgage*"); and (b) that certain Assignment of Rents and Leases dated May 15, 2013, executed by La Salle Commercial in favor of the Acquest Lender (together with the La Salle Mortgage, the "*Acquest Prepetition Liens*"). La Salle Commercial is not a borrower or guarantor with respect to the Acquest Note and did not receive, directly or indirectly, any of the proceeds of the Acquest Note. (Goldstein Declaration at ¶ 17.) Instead, the Acquest Note proceeds were used by Acquest to make a deposit with respect to a potential acquisition that ultimately did not occur, and the deposit was forfeited. (*Id.*)

33.    The Debtors have filed an adversary proceeding to, among other things, avoid the Acquest Lender's purported lien on the La Salle Property (Adversary Case No. 13-01284).

34.    In order to grant a "priming" lien on the La Salle Property, the Debtors must show that the holders of any lien in that property will receive adequate protection from any loss of value to such interest from the granting of a more senior lien. 11 U.S.C. § 364(d)(1)(B).

35.    As adequate protection to the holder of the Acquest Prepetition Liens, to the extent that there is a diminution in value to the Acquest Prepetition Liens and to the extend that

the Acquest Prepetition Liens are valid and unavoidable, the Debtors propose to provide the

holder of the Acquest Prepetition Lien replacement liens in and to all Senior DIP Collateral,

subject to: (a) any valid, perfected, enforceable, and non-avoidable lien in existence as of the

Initial Petition Date, including liens held by the Dearborn Prepetition Lenders and the South

Wells Lender (defined in the Goldstein Declaration); and (b) the Senior DIP Liens granted to the

Senior DIP Lender pursuant to this Motion.

36.     At the evidentiary hearing on this Motion, the Debtors intend to prove that they

possess a sufficient equity cushion in their real properties to adequately protect the Acquest

Lender by granting replacement liens in the Debtors' properties to the extent that there is a

diminution in value to the Acquest Prepetition Liens and to the extent that the Acquest

Prepetition Liens are valid and unavoidable. Indeed, the evidence will show that, in contrast to

the $800,000 of debt which will prime the Acquest Lender, the Debtors possess millions of

dollars of equity in their properties. Moreover, there has been no suggestion that the value of the

Senior DIP Collateral is depreciating, so replacement liens in the Senior DIP Collateral, in which

there is a significant equity cushion, will adequately protect the value of the Acquest Prepetition

Liens.

37.     Pursuant to section 361 of the Bankruptcy Code, replacement liens in the nature

of those proposed by the Debtors in this instance serve as adequate protection. 11 U.S.C. § 361;

*see also In re Am. Consol. Transp. Companies, Inc.*, 09-BK-26062, 2009 WL 3571268 (Bankr.

N.D. Ill. Oct. 28, 2009) ("A debtor may provide adequate protection through periodic cash

payments, replacement liens, or 'the indubitable equivalent' of the creditor's interest."). The

existence of an equity cushion in existing collateral is often sufficient in and of itself to provide

adequate protection of a secured creditor's interest in property. *In re Olde Prairie Block Owner,*

*LLC*, 447 B.R. 578, 583 (Bankr. N.D. Ill. 2011) ("If adequate protection of [the lender's] interest was necessary, a large equity cushion may suffice."); *In re Megan-Racine Associates, Inc.*, 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996) ("[W]here there is a substantial value cushion there may be no need for additional protection").

**D.     The La Salle Association and the Cook County Treasurer Will Be Adequately Protected by the Establishment of the Senior Lien Escrow**

38.     Although the Senior DIP Lender is technically priming the liens asserted by the La Salle Association and the Cook County Treasurer on the La Salle Property, the Debtors have agreed to use the proceeds of the Gouletas Loan to establish a segregated account (the "*Senior Lien Escrow*") for the benefit of these potential lienors.  Accordingly, the La Salle Association and the Cook County Treasurer are receiving the benefit of a cash escrow to pay their claims if and when allowed, and thus as a practical matter, they are not only fully adequately protected, but are indeed getting better and more liquid collateral than they presently have.

39.     The La Salle Association has asserted liens against the La Salle Property pursuant to (i) that certain Grant and Reservation of Easements Pertaining to the Premises Commonly Known as 1212 North LaSalle, Chicago, Illinois, filed with the Cook County Recorder of Deeds on April 5, 1993, identified as document number 93247586 (the "*GRE*"), against the second floor atrium commercial parcel and interior ground floor commercial parcel; and (ii) that certain Declaration of Condominium Ownership for the LaSalle Private Residences Condominium filed with the Cook County Recorder of Deeds on April 5, 1993, identified as document number 93247587, and 765 ILCS 605/9(g)(1) against the twenty-six (26) parking space units located at the La Salle Property (collectively, the "*La Salle Association Liens*").  The La Salle Association filed three proofs of claim in La Salle Commercial's Chapter 11 Case:  (1) for $87,068.66, based on a Claim for Lien filed with the Cook County Recorder of Deeds on June 22, 2010, identified

as document number 1017318051, against the second floor atrium commercial parcel (PIN 17-04-221-047-0000); (2) $63,349.10 for unpaid common condominium expenses owed on account of the interior ground floor commercial parcel allegedly secured by the GRE; and (3) for $59,665.45 for unpaid common condominium expenses allegedly secured by the 26 parking spaces pursuant to 765 ILCS 605/9(g)(1).

40.     The Debtors also believe that La Salle Commercial owes the Cook County Treasurer unpaid property taxes in the amount of $45,625.52.  While the Cook County Treasurer has not filed a proof of claim in La Salle Commercial's Chapter 11 Case, such unpaid taxes may give rise to a statutory lien on the La Salle Property (the "*La Salle Tax Lien*").  To provide adequate protection to the La Salle Association and the Cook County Treasurer, La Salle Commercial is establishing the aforementioned Senior Lien Escrow in excess of the aggregate of:  (i) the full amount set forth in the La Salle Association's proofs of claim; and (ii) the full amount of the unpaid taxes owing to the Cook County Treasurer on the subject property.

41.     To the extent that the La Salle Association and/or the Cook County Treasurer have allowed secured claims against the La Salle Property, the Debtors seek authorization to transfer funds from the Senior Lien Escrow to the Cook County Treasurer and/or the La Salle Association, respectively, in the amount of such allowed secured claims. To the extent that such allowed claims are less than the amount in the Senior Lien Escrow, the balance of such escrow account shall be repaid to Mr. Gouletas.

42.     As a practical matter, the reservation and use of escrowed funds as proposed herein not only fully protects the value of the La Salle Association's and the Cook County Treasurer's liens on the La Salle Property but also provides additional and better value by offering a source of liquid collateral to pay these claims, if and when they are allowed.

**E.      The Senior DIP Lender Is Entitled to the "Good Faith" Protections of Section 364(e) of the Bankruptcy Code**

43.      The terms and conditions of the postpetition financing proposed herein are fair and reasonable.  Such terms and conditions were negotiated in good faith and at arm's length at all times by the Debtors, the proposed lenders, and their respective advisors.  The Debtors and the postpetition lenders also conducted extensive negotiations concerning the Budget and the impact of the financing on the Debtors' other secured lenders.  The terms and provisions of the postpetition financing proposed herein are fair and reasonable under the Debtors' circumstances and reflect the most favorable terms upon which the Debtors could obtain the needed postpetition financing.

44.      In light of the foregoing, the Senior DIP Lender should be accorded the benefits and protections of section 364(e) of the Bankruptcy Code with respect to the Senior DIP Loan; specifically, any loans, advances, or other financial accommodations that the Senior DIP Lender makes or causes to be made from time to time to the Debtors on the terms and conditions set forth in the Senior DIP Loan should be deemed to have been made and provided in "good faith" as the term is used in section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the DIP Orders or the Senior DIP Loan or any provisions therein are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the express consent of the Senior DIP Lender.

**F.      Establishing Notice Procedures and Request for Final Hearing**

45.      Pursuant to Local Rule 4001-2(c), the Final Order may only be entered after notice and a hearing.  The Debtors propose to serve by first-class mail, facsimile transmission, or CM/ECF service, within three (3) business days of entry of the Interim Order by the Court, a

copy of the Interim Order and a notice of the Final Hearing (collectively, the "*Final Hearing*

*Notice*") to consider entry of the Final Order on the date established by the Court to the Notice

Parties (defined herein).  Any party in interest objecting to the relief sought at the Final Hearing

shall serve and file objections, which objections shall:   (i) be in writing; (ii) conform to the

Bankruptcy Rules and the Local Rules; and (iii) be filed with the Clerk of the United States

Bankruptcy Court for the Northern District of Illinois no later than three (3) business days before

the Final Hearing and served upon the following parties so as to be actually received not less

than three (3) business days before the Final Hearing: (a) the Office of the United States Trustee

for the Northern District of Illinois, 219 South Dearborn Street, Room 873, Chicago, Illinois

60604, Attn: Gretchen Silver; (b) counsel to the Debtors, Goldstein & McClintock LLLP, 208 S.

LaSalle Street, Suite 1750, Chicago, Illinois 60604, Attn: Harold D. Israel; (c) RCB Equities,

LLC, c/o Prudential Rubloff Commerical Finance, 980 N. Michigan Ave., 9th Floor, Chicago,

Illinois 60611, Attn: Rob Powell; (d) counsel to the Dearborn Senior Lender, Carlson Dash,

LLC, 216 S. Jefferson Street, Suite 504, Chicago, Illinois 60661, Attn: Kurt M. Carlson and

Colleen E. McManus; (e) counsel to the Dearborn Subordinated Lender, Katten Muchin

Rosenman LLP, 525 W. Monroe Street, Chicago, Illinois 60661, Attn: Paige E. Barr; (f) the

South Wells Lender, River City Investors, LLC, c/o Campbell Morgan, 144 West Maple Road,

Suite 100, Birmingham, Michigan 48009; (g) counsel to the LaSalle Private Residences

Condominium Association, Arnstein & Lehr LLP, 120 S. Riverside Plaza, Suite 1200, Chicago,

Illinois 60606, Attn: Kevin H. Morse; (h) Nicholas Gouletas, 182 West Lake Street, Suite 200,

Chicago, Illinois 60601; and (i) each of the creditors included on the lists filed under Rule

1007(d) for all of the Debtors on a consolidated basis (collectively, the "*Notice Parties*").

46.     The Debtors request that the Court schedule the Final Hearing and approve the proposed notice and objection procedures for the Final Hearing set forth herein.

## NOTICE AND PRIOR MOTIONS

47.     Notice of the Original Motion was served on the Notice Parties and the Acquest Lender on or before October 30, 2013.

48.     Notice of this Motion has been served by overnight mail, CM/ECF service, or facsimile transmission on the Notice Parties and the Acquest Lender, on or before December 2, 2013.  In light of the nature of the relief requested herein, the Debtors submit that no other and further notice of the Motion is necessary or required.

**WHEREFORE,** the Debtors request that the Court:  (i) immediately enter the Interim Order in substantially the same form submitted herewith; (ii) schedule the Final Hearing; and (iii) grant the Debtors such other and further relief as the Court may deem just and proper.

Dated:  December 2, 2013                            Respectfully submitted,

                                                    **LAKE DEARBORN, LLC, et al.**

                                                    By:____/s/ Harley J. Goldstein_____

                                                    **GOLDSTEIN & MCCLINTOCK, LLLP**
                                                    Harley J. Goldstein
                                                    Harold D. Israel
                                                    208 S. LaSalle Street, Suite 1750
                                                    Chicago, Illinois  60604
                                                    Telephone: (312) 337-7700
                                                    Facsimile:  (312) 277-2305

                                                    *Counsel for the Debtors and*
                                                    *Debtors in Possession*